**UNITED STATES of America**

**v.**

**Benjamin TCHACK, Defendant.**

**No. 64 Cr. 411.**

United States District Court
S. D. New York.

Jan. 31, 1969.

---

Robert M. Morgenthau, U. S. Atty., S. D. N. Y., by Ross Sandler, New York City, of counsel, for plaintiff.

Kenneth Kaplan, New York City, for defendant.

EDELSTEIN, District Judge.

## OPINION

The court has before it an omnibus motion filed by counsel on behalf of defendant for dismissal of the indictment for lack of a speedy trial, for the suppression of a statement given by the defendant, for the suppression and return of various items taken from the defendant's apartment, and, in the alternative, for a bill of particulars as well as an order directing the government to produce for inspection and copying all of the property which was taken from the defendant's apartment.

Defendant Benjamin Tchack was indicted on or about April 24, 1964, for violating 18 U.S.C. §§ 1341, 1342 (using the mails to defraud). Approximately four and one-half years having elapsed between the filing of the indictment and the assignment of this case for trial, defendant moves to dismiss the indictment on the grounds that he has been denied

the right to a speedy trial guaranteed by the Sixth Amendment, and that there has been unnecessary delay in bringing him to trial in violation of Rule 48(b), Federal Rules of Criminal Procedure.

At no time during the four and one-half year period did the defendant object to the delay or demand a speedy trial although he was at all times represented by counsel of his own choice, even prior to the presentment of the case to the grand jury. Moreover, he has been unable to show any prejudice to himself other than that which he suggests may be inferred from the mere fact of a four and one-half year delay. See e. g., Pitts v. North Carolina, 395 F.2d 182 (4th Cir. 1968).

■■ Under the leading case in this jurisdiction, United States v. Lustman, 258 F.2d 475 (2d Cir.) cert. denied 358 U.S. 880, 79 S.Ct. 118, 3 L.Ed.2d 109 (1958), a defendant under the circumstances prevailing here—namely a defendant represented by counsel and suffering no specific or unusual prejudice— waives his Sixth Amendment right unless he requests a speedy trial. It is settled that the Sixth Amendment is a shield to protect the defendant and not a sword which he may use to thwart justice. *Lustman*, 258 F.2d at 478; accord, United States v. Della Rocca, 388 F.2d 525 (2d Cir. 1968) vacated on other grounds, 390 U.S. 745, 88 S.Ct. 1443, 20 L.Ed.2d 274 (1968) (5 year delay); United States v. Maxwell, 383 F.2d 437 (2d Cir. 1967) (5 year delay); United States v. Van Allen, 288 F.2d 825 (2d Cir. 1961) cert. denied, 368 U.S. 836, 82 S.Ct. 31, 7 L.Ed.2d 37 (1961) (6 year delay); United States v. Algranati, 239 F.Supp. 116 (S.D.N.Y.1965) (5 year delay). Compare cases such as United States v. Mann, 291 F.Supp. 268 (S.D. N.Y.1968); United States v. Roberts, 293 F.Supp. 195 (S.D.N.Y. filed November 4, 1968) or United States v. Richardson, 291 F.Supp. 441 (S.D.N.Y.1968), where specific prejudice was shown to have injured defendant in the presentment of his defense.

Defendant also relies on Rule 48(b) of the Federal Rules of Criminal Procedure, which rule provides that an indictment may be dismissed if there is "unnecessary delay in bringing a defendant to trial."

■ A Rule 48(b) motion is addressed to the sound discretion of the court. In determining this motion it is incumbent on the court to consider all relevant factors, especially the four factors set out in United States v. Simmons, 388 F.2d 804 (2d Cir. 1964); length of delay, reason for the delay, prejudice to defendant, and waiver by defendant.

. ■ While a four and a half year delay is unduly lengthy and while the government offers no good reason for the delay, the defendant did at least once consent to an adjournment. Moreover, and crucial to this motion, the defendant has not alleged any particular prejudice to himself. No witnesses are dead or missing; defendant is not aged, infirm or less able to stand trial now than he was four and one-half years ago. The defendant's bare and general assertions that there has been a lapse of time, that of necessity the memories of potential government witnesses have been dimmed and that unspecified evidence has been mislaid are insufficient. United States v. Sawyers, 186 F.Supp. 264 (N.D.Cal.1960); United States v. Monarch Radio & T.V. Corp., 162 F.Supp. 910 (S.D.N.Y.1958); United States v. Gladding, 265 F.Supp. 850 (S.D.N.Y. 1966); United States v. Research Foundation, Inc., 155 F.Supp. 650 (S.D.N.Y. 1957). Cf. United States v. Ewell, 383 U.S. 116, 120–121, 86 S.Ct. 773, 15 L.Ed. 2d 627 (1966). The defendant does not even claim that he will have difficulty recollecting the events surrounding the present charge.

Accordingly, defendant's motion to dismiss the indictment is denied without prejudice to him to renew at the conclusion of the trial.

The government intends to use as evidence against defendant Tchack a statement executed by Tchack on September

23, 1963, and certain books, tapes and records taken from Tchack's apartment on that date. Tchack maintains that the statement was a coerced confession, that the records, tapes and books are the fruits of an illegal search, and that consequently the Fifth and Fourth Amendments to the Constitution forbid their being admitted into evidence. Concededly the inspectors had no search warrant or arrest warrant. For that matter, the subject of a warrant was never discussed. At no time did the defendant ask whether the inspectors had a search warrant or arrest warrant, and at no time did the inspectors state or indicate that they had such documents. A full suppression hearing was held, and it is this court's conclusion that defendant's claims are without merit.

The facts are as follows:

Postal Inspector Mailloux had been placed in charge of investigating the non-payment of charges due on certain introductory offers of diverse book and record clubs. The materials were addressed to the names of Tracy, Lacey, and Macy, at 428 East 89 Street, and at another New York City address. In the course of his investigations during the summer of 1963 Inspector Mailloux visited the East 89 Street premises and found that they were leased by Tchack but that Tchack was in Europe at the time. Upon Tchack's return, Inspector Mailloux, accompanied by Inspector Palmer, returned to the East 89 Street address and there interviewed Tchack in the latter's apartment, although Mailloux did not at that time know or suspect if Tchack had ordered the materials or if they were in his apartment.

Prior to entering the defendant's apartment, the two inspectors properly identified themselves and were admitted to Tchack's apartment at approximately 11:30 a. m. Mailloux asked Tchack if he had any information concerning certain mailings. Tchack responded that the materials had been ordered by friends who had been staying at his apartment. Inspector Mailloux asked defendant if any of the ordered materials had been left behind and if so whether he could examine them. Tchack then handed Mailloux several volumes and Mailloux recognized one of them. Mailloux then made use of an ultra-violet light to detect his own initials which he had imprinted on the book after having first intercepted it during the course of his investigation and while it was still at the post office. Confronted with this demonstration Tchack thereupon readily admitted that he had ordered and received the materials in question. At this point Inspectors Mailloux and Palmer had been in Tchack's apartment for between ten and twenty minutes. Mailloux then orally advised Tchack that he could consult with an attorney, that he had a right to remain silent, and that any statement that he did make could be used against him.

Immediately thereafter and at Mailloux's suggestion, Tchack wrote out the statement[1] in issue. The evidence is undisputed that except for the introductory material above the line (reciting the voluntary nature of the confession) which was written by Inspector Mailloux and the opening words of the confession—to wit—"On or about"—the statement was drafted freely by Tchack in his own words. See Appendix "A".

Mailloux next suggested that Tchack turn over all the books, records and tapes, and that it "would help" if he did so. This Tchack hastened to do and in fact allowed Mailloux to assist him in removing the merchandise from the bookshelves. Mailloux then called for a postal truck to collect the twenty to thirty tapes, twenty to thirty books, and approximately twenty records which had been collected. At that time Inspector Mailloux called the United States Attorney's Office and said that they had a "prospective defendant." The inspectors were advised, however, that there was no need to arrest Tchack at that time.

I. The statement appears as Appendix "A" infra.

This was the first time either inspector had referred to Tchack as a defendant. The truck arrived presently, the materials were loaded in, and the inspectors left, sometime between 2:00 and 4:00 p. m.

At no time did Tchack ask the inspectors to leave his apartment, although Mailloux told Tchack that they would leave if requested. On the contrary he was quite cooperative. At no time did the inspectors threaten Tchack with prosecution, arrest, detention, or being brought down to headquarters if he did not cooperate, nor did the inspectors advise Tchack that they could prevent his prosecution if he did cooperate.

Defendant contends that he had undergone group therapy for diverse psychological disorders in 1963 before taking an extended trip to Europe. Defendant also contends that he was under extreme emotional pressure at the time of the interview, that he had returned from Europe on an all night flight that same day, and that he was willing "to do anything or sign anything in order to get rid of Inspectors Mailloux and Palmer."

### The Statement

█ The critical issue for determination here is whether this statement was voluntarily given. Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 3501(a), (b) and (d). Under this law there is no doubt but that the statement was voluntary. Defendant's will was not overborne, he was not cajoled, threatened, or taken to hostile or unfamiliar surroundings.[2] Far from being an illiterate or a juvenile, defendant possessed in 1963 a Bachelor of Arts degree from Rutgers University and was 33 years old. He was a licensed teacher and taught handicapped children. This court found him to be astute and articu-

late. He was not brainwashed. If he was fearful, fatigued, and under a great emotional strain during the interview as he now claims, he made no mention of these conditions to the inspectors. Neither did he reveal to them any history of mental disorders or group therapy.[3] In fact, he did not portray any emotional upset whatever during his interview. He gave a coherent statement interlaced with exculpatory comments to the inspectors within ten or twenty minutes after their arrival on his premises.

The defendant's attempt to put a coercive stamp on his statement by arguing in substance and effect that he was too distraught to know what he was doing is unfounded and cannot succeed. Should his plea—completely unsupported by the credible evidence and in no way communicated to the inspectors—that he was overwhelmed by the naked fact that the inspectors were law enforcement officers, plus his alleged subjective fear of being handcuffed and being taken to headquarters be accepted as grounds sufficient to scuttle a statement drafted by himself, then any and every statement similarly given to a law enforcement officer is equally endangered and the doctrine that no man may inculpate himself from his own mouth will become engrained as precedent. Such a result was not envisioned by the framers of the Omnibus Crime Bill of 1968.

Counsel did not argue the case under the provisions of the Omnibus Crime Bill but rather treated this case as falling within the Miranda[4] framework. The court will do so as well.

Insofar as it is conceded that all of the *Miranda* warnings were not given (defendant was at no time advised that if he could not afford a lawyer he would be provided with one),[5] the crucial ques-

2. Nor was there any trick or device employed here to overcome defendant's will. Contrast e. g. the instant case with United States ex rel. Caminito v. Murphy, 222 F.2d 698 (2d Cir. 1955).

3. In this regard it should be noted that no medical testimony was adduced at the hearing.

4. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

5. For authority that this omission is not necessarily fatal see Miranda v. Arizona, 384 U.S. 436 (1966) at fn. 43 p. 473, 86 S.Ct. 1602, 16 L.Ed.2d 694; United States v. Messina, 388 F.2d 393 (2d Cir.) cert. denied 390 U.S. 1026, 88 S.Ct.

tion is whether defendant was "in custody" or his freedom of action circumvented in any significant way. For if defendant was in custody or his freedom of action circumvented in any significant degree, the statement is inadmissible.

Defendant, however, was not in custody, nor was he deprived of his freedom of action in any way. It must be emphasized that Tchack was free to order the inspectors to leave his apartment at any time; he could have remained mute; he could have left himself. Instead of doing so he cooperated with the inspectors. He was not threatened with arrest, being handcuffed, or being sent to prison. Consequently, this court concludes that there was no curtailment of Tchack's freedom of action, not only to a "significant degree" but to "any" degree at all.

█ Moreover, and contrary to defendant's contention, Inspectors Mailloux and Palmer had not shifted their focus from the investigatory to the accusatory stage when they approached Tchack and gained entrance to his apartment as claimed by defendant. In fact, Mailloux had no knowledge that the records, books and tapes were in the apartment until the interview, or for that matter, that Tchack had ordered the materials. To say that Tchack was in custody at the time of his statement is to extend that term beyond its reasonable intent. United States v. Messina, 388 F.2d 393 (2d Cir.) cert. denied 390 U.S. 1026, 88 S.Ct. 1413, 20 L.Ed.2d 283 (1968); Menendez v. United States, 393 F.2d 312, 317–318 (5th Cir. 1968); United States v. Thomas, 396 F.2d 310 (2d Cir. 1968). *Miranda*, therefore, is inapplicable to this case. The statement was voluntarily given and is admissible.

### The Seizure

█ Defendant's arguments for invalidating the seizure run parallel to those he advanced in favor of suppress-

ing his statement. Accordingly, some redundancy in treating this problem is unavoidable.

Defendant does not deny that he overtly and affirmatively consented to the surrender of the books, records and tapes in issue, nor does he deny having removed most of them from his bookshelves and assembling them on the floor. He does not deny that he read the words "voluntarily surrendering" on the statement he signed. What he does suggest is that he was so emotionally overwrought that he would deny the inspectors nothing in his hopes of expediting their departure. Whether he was actually in such a frame of mind is dubious considering the self-serving sentences in the statement (e. g. intended to pay for the merchandise), his appearance to the inspectors, and the total lack of extrinsic proof adduced that on September 3, 1963, Tchack was in actual fact suffering from severe emotional distress.

He also implies that he was overwhelmed by the "aura of officialdom." See Pekar v. United States, 315 F.2d 319 (5th Cir. 1963); Judd v. United States, 89 U.S.App.D.C. 64, 190 F.2d 649 (1951). Those cases are distinguishable, however. Here defendant was in his own apartment during the "search"—not in jail or elsewhere. Tchack, moreover, was, and is a man of discernment—he knew and does not deny that he was being asked, not ordered, to deliver up the books. United States v. Vickers, 387 F.2d 703 (4th Cir. 1967) cert. denied 392 U.S. 912, 88 S.Ct. 2069, 20 L.Ed.2d 1369 (1968); United States v. Cachoian, 364 F.2d 291 (2d Cir. 1966) cert. denied 385 U.S. 1029, 87 S.Ct. 757, 17 L.Ed.2d 676 (1967).

█ Finally, Tchack did more than consent to a search—he delivered up the goods himself. Voluntary assistance given by defendant is, of course, strong evidence of consent. Rogers v. United States, 369 F.2d 944, 948 (10th Cir. 1966) cert. denied Ferguson v. United

1413, 20 L.Ed.2d 283 (1968); United States v. Fisher, 387 F.2d 165 (2d Cir.

1967) cert. denied 390 U.S. 953, 88 S.Ct. 1047, 19 L.Ed.2d 1146 (1968).

States, 388 U.S. 922, 87 S.Ct. 2125, 18 L.Ed.2d 1371 (1967); United States ex rel. Anderson v. Rundle, 274 F.Supp. 364, 370–372 (E.D.Pa.1967) aff'd. 393 F.2d 635 (3rd Cir. 1968); Keegan v. United States, 385 F.2d 260 (9th Cir. 1967); United States v. Catanzaro, 282 F.Supp. 68 (S.D.N.Y.1968).

Accordingly, defendant's suppression motions are denied in all respects.

Defendant's motions for a bill of particulars and for inspection and copying of the seized materials have been disposed of by agreement between the parties.

### APPENDIX "A"

State of New York
County of New York
} ss.

Ben Tchack being first duly sworn deposes and says:

I am 33 years old, and have resided at Apt. 4C 428 E. 89th St. NYC for the past 18 months. I am employed by the New York City Board of Education in the Bureau of Physically Handicapped 110 Livingston St. New York, N.Y.

I have been advised that I can consult with an attorney and that this statement is completely voluntary on my part and is not due to any threats or promises made to me by Postal Inspectors G. A. Mailloux or W. S. Palmer. I am also aware that this statement can be used against me or for me in a court of law.

On or about February 1963, I started ordering books, records and stero tapes through the mails using names other than my own with the object of taking advantage of the introductory offers. I used other names because the companies involved would not honor my requests if I used my true name.

[GAM
9/3/63]

No one else assisted me in the conduct of this activity—I completed all the orders myself and mailed them in the vi-cinity of my home. Several items were delivered to 1582 First Ave. which is the home of a friend not involved in this matter—Among the names that I used were the following, L. Casey, H. Casey, B. Hack, H. Lacy, H. Macey, B. Tracy & B. Watts. As far as I know there were no other used—Among the companies I sent a payment to was the Book Find Club, and also the Columbia Record Club and others. I had full intentions of fulfilling the offers made by these companies as indicated by the last sentence. I had no idea that this activity constituted an intent to use the mails to defraud since I intended to fulfill the agreement as stated on the advertised coupons. At the time I ordered these items I intended to pay for them, but was a little behind in my bills. I am now in a position to obtain money to pay up outstanding debts and am voluntarily surrendering to Inspector MAILLOUX and PALMER all the books, records, and tapes in my possession which I have identified as having been ordered and received under names other than my own.

I have been shown by Inspector MAILLOUX six sheets of paper which describe parcels and the contents of which were delivered to me and I have initialed and dated these sheets for purposes of identification—I am sorry for what I have done, and in the future I will use only my name in ordering merchandise and will not use names other than my own unless I make immediate payment therefore. I am a teacher of the physically handicapped, I have invested seven years in preparing myself for this position and the slightest blemish on my record will cause me to be dismissed. My background is faultless and I respectfully request that these facts be taken into consideration—

sworn & Subscribed
to before me                    /s/ Ben Tchack

this 3rd Day of September 1963 at New York, N.Y.

G. A. Mailloux, Postal Inspector.