The UNITED STATES

v.

**MARK II ELECTRONICS OF LOUISI-ANA, INC.,** James M. Scanlan, William Gray, Charles Yuspeh, and Robert May-croft.

**Crim. No. 31279.**

United States District Court
E. D. Louisiana,
New Orleans Division.
Nov. 17, 1969.

Julian Murray, Asst. U. S. Atty., New Orleans, La., for plaintiff.

Jack C. Benjamin of Kierr & Gainsburgh, New Orleans, La., for Charles Yuspeh.

Francis R. Salazar, Denver, Colo., for James M. Scanlan.

COMISKEY, District Judge.

Defendants Mark II Electronics of Louisiana, Inc., James M. Scanlan, William Gray, Charles Yuspeh and Robert Maycroft were originally indicted on February 18, 1965, for violating 18 U.S.C. § 1341, which prohibits mail fraud. According to the indictment, the defendants engaged in promoting a referral selling plan to effect sales of intercommunicating, fire and burglar alarm systems, which referral selling plan was allegedly fraudulent in violation of § 1341. The alleged criminal acts took place during the years 1962 through 1964. The fraudulent acts consisted of a number of sales "pitches" to prospective purchasers in which fraudulent representations were allegedly made. The indictment charged that the mails were used to further this scheme in violation of § 1341 during the years 1963 and 1964.

On March 27, 1968, the original indictment was dismissed by Judge Alvin B. Rubin under Rule 48(b) of the Federal Rules of Criminal Procedure because of the long delay in prosecuting this case. United States v. Mark II Electronics of Louisiana, 283 F.Supp. 280 (E.D.La.1968). However, the indictment was dismissed without prejudice to the Government's right to re-indict the defendants.

The Government exercised this right and re-indicted the defendants on June 4, 1968, under the same statute. In August of 1968 the defendants James M. Scanlan and Charles Yuspeh filed motions to dismiss the new indictment under the Sixth Amendment and Rule 48(b) of the Federal Rules of Criminal Procedure. These motions were denied on September 30, 1968. The motions were re-urged at the beginning of the trial of this case on February 3, 1969. The Court advised the parties that these motions had heretofore been denied, but we further stated that during or at the conclusion of the trial we would reconsider them should it appear from the evidence and the witnesses that the delay in the prosecution of this case resulted in serious prejudice to these defendants. The trial ended on February 28, 1969, at which time the jury was hopelessly deadlocked in its attempt to reach a verdict as to defendants James M. Scanlan and Charles Yuspeh. Therefore, this Court declared a mistrial as to these defendants on that date. The jury found defendant Mark II Electronics of Louisiana guilty. Defendant Robert Maycroft was not tried, as his present whereabouts are unknown.

We have now reviewed the testimony of the witnesses and the other evidence presented at the trial, and we conclude that the defendants James M. Scanlan and Charles Yuspeh were so prejudiced by the long delay of the prosecution that their motions to dismiss the indictment under the Sixth Amendment and Rule 48(b) of the Federal Rules of Criminal Procedure should be granted.

1. THE SIXTH AMENDMENT

In considering whether a defendant has been denied his constitutional right to a speedy trial, the Court must take into consideration a number of factors:

"Four factors are relevant to a consideration of whether denial of a

speedy trial assumes due process proportions: the length of delay, the reason for the delay, the prejudice to the defendant, and waiver by the defendant." United States ex rel. Von Cseh v. Fay, 313 F.2d 620, 623 (2nd Cir. 1963); Oden v. United States, 410 F.2d 103, 105 (5th Cir. 1969).

These factors are not to be treated independently as separate prerequisites to the successful invoking of the Sixth Amendment's right to a speedy trial. Rather, they are interrelated and must be read pari materiae. We do not believe that all four factors must be resolved in favor of the accused in every case to justify relief. In United States ex rel. Von Cseh v. Fay, supra, 313 F.2d at 623, the Court said:

"These factors are to be considered together because they are interrelated. For example, even a short delay might constitute a violation of the defendant's constitutional right where the defendant is held without bail, and there is no reason for the delay."

See also: United States v. Velez-Arenas, 299 F.Supp. 463, 464 (D.Puerto Rico, 1969); United States v. Roberts, 293 F. Supp. 195, 197 (S.D.N.Y.1968).

With this principle in mind, we proceed to analyze these four interrelated factors.

## I. LENGTH OF DELAY

■■ It is settled in this circuit that the Sixth Amendment right to a speedy trial is only applicable once a prosecution is begun; it does not arise immediately after the commission of the offense. Oden v. United States, supra, 410 F.2d 103, 104 (5th Cir. 1969); Bruce v. United States, 351 F.2d 318, 320 (5th Cir. 1965), cert. den. 384 U.S. 921, 86 S.Ct. 1370, 16 L.Ed.2d 441 (1966), reh. den. 384 U.S. 958, 86 S.Ct. 1575, 16 L.Ed.2d 553 (1966); Harlow v. United States, 301 F.2d 361, 366 (5th Cir. 1962), cert. den. 371 U.S. 814, 83 S.Ct. 25, 9 L.Ed.2d 56 (1962), reh. den. 371 U.S. 906, 83 S.Ct. 204, 9 L.Ed.2d 167 (1962). The original indictment was brought against the defendants on February 18, 1965— four years before the trial finally took place. Although the defendants were reindicted on June 4, 1968, this indictment charges virtually the same offenses as the original indictment. It is clear to the Court that this four year period is an unusually long delay and may form the basis, along with other circumstances, for the granting of the defendants' motions to dismiss the indictment.

Other courts have come to similar conclusions. In United States v. Tchack, 296 F.Supp. 500, 502 (S.D.N.Y.1969), the court said that "a four and a half year delay is unduly lengthy * * *." The Second Circuit Court of Appeals found that a "delay of three years and seven months from indictment to trial was unusually long." United States ex rel. Von Cseh v. Fay, supra, 313 F.2d 620, 624 (2nd Cir. 1963). And in United States v. Richardson, 291 F.Supp. 441, 444 (S.D.N.Y.1968), the court held that "[a] period of four years is enough of a delay to satisfy the first factor relevant to the violation of a right to a speedy trial * * *."

## 2. REASON FOR THE DELAY

The Government does not blame its delay in prosecuting this case on traditional reasons for delay—further time to investigate the case, to locate missing witnesses or to discover additional evidence. United States v. Richardson, supra, 291 F.Supp. 441 (S.D.N.Y.1968); United States v. Lester, 328 F.2d 971 (2nd Cir. 1964); United States v. Kaufman, 311 F.2d 695 (2nd Cir. 1963). And, although the Government contends that the delay was caused by an insufficient number of judges, there is nothing in the record to indicate that a trial date was ever sought in the thirty-four months the case was pending before the Court itself called a conference. We are of the opinion that this failure to request a trial date was unwarranted. "[The Government] has a duty to press criminal cases to trial, to give them any necessary priority, and to prevent, whenever possible, even the suggestion of

staleness." Hodges v. United States, 408 F.2d 543, 551 (8th Cir. 1969). Therefore, we do not find here that the delay, under all the circumstances of this case, was justified.

### 3. PREJUDICE TO THE DEFENDANTS

 It is the opinion of this Court that this aspect of the right to a speedy trial is the most important factor to be considered. The very purpose of the granting of this right is to protect the defendant against the prejudicial effects of a delay in the prosecution. "This guarantee is an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself." United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 776, 15 L.Ed.2d 627 (1966). One of the chief prejudicial effects of a long delay in the prosecution of a case is the weakening of a defendant's ability to adequately defend himself because of the absence of witnesses and the loss of memory by many witnesses who do testify. "The fundamental right to a speedy trial, its origins tracing back at least to the Magna Carta, is designed in part to insure that a criminal defendant is not rendered unable to rebut charges against him because undue delay has caused memories to dim or witnesses to disappear." Pitts v. State of North Carolina, 395 F.2d 182, 184 (4th Cir. 1968).

It is clear to this Court that the defendants were gravely prejudiced by the four year delay between the original indictment brought on February 18, 1965, and the trial held during the month of February of 1969. The present indictment before the Court concerns an alleged scheme to defraud allegedly begun on March 12, 1962, and continued through July of 1964. This scheme, which began more than seven and one-half years ago, allegedly resulted in the use of the mails in four instances: August 1, 1963, September 10, 1963, January of 1964, and March 19, 1964. One of these four instances involved attempted sales of Mark II equipment to Mr. and Mrs. Cecil McKinley. The Mark II salesman who made the allegedly false statements was not available when this case was tried in February of 1969. Another instance was the sale to Mr. and Mrs. Audran Sands made by a Mark II salesman, W. J. Hobbs, who is now dead. The third sale was made to Mr. and Mrs. Welch Bush by a salesman for Mark II named Robert Maycroft, a co-defendant in this case whose whereabouts are unknown; Maycroft fled this jurisdiction and is reportedly living in Mexico, if he is still living at all. The last sale to Mr. and Mrs. Hubert Ben was made by a Mark II salesman named Anthony J. Saltalamacchia, Jr. whose whereabouts are unknown to the parties. An examination of the trial record shows repeated instances in which witnesses could not recall events and conversations that occurred so many years ago. One government witness, Emanuel Anthony Valenti, confessed to having such a faulty memory that the Government terminated the witness' examination and conceded that the witness' testimony should be disregarded. One of the four purchasers, Mr. and Mrs. Ben, confessed to having failing memories and pleaded the passage of more than five years. Another purchaser, Mr. Sans, could not recall events occurring even a year before the trial. Government witness Samuel Katz, a key witness, stated that he was unable to remember statements made to customers and pleaded that six years had passed and his memory was faulty. Government witnesses Mrs. Wright Luter and George Neumann, Jr. confessed that they had bad memories. Witnesses Elwin Denson, Anthony Liuzza and Glen Barrett also said that their memories were poor. When the defendants presented their case, a similar pattern of defense witnesses admitting dimmed memories due to the passage of time was evident. A large part of this case involves remembering what various persons said four, five, six and seven years ago. These

conversations and the importance of the exact words used to convey thoughts in such conversations are necessary for a proper consideration of this case; yet witness after witness, in attempting to recall these conversations, found that their faulty memories impaired their ability to testify. Purchasers of equipment from the defendant company were compelled to testify as to what Mark II salesmen told them, but most of these salesmen are now dead or have disappeared. There was no chance for the defendants to effectively cross-examine these witnesses or to examine the salesmen in order to ascertain the exact conversations which took place.

The Court is convinced that the passage of time has substantially impaired the defendants' ability to fully and fairly defend themselves against these charges. To set this case for trial again as the Government requests with the additional passage of time before the new trial is held would only further dim the memories of the witnesses that the Court heard this past February. Accordingly, the Court believes that the prejudice to the defendants is such that they are entitled to a dismissal of the indictment in accordance with the Sixth Amendment and Rule 48(b) of the Federal Rules of Criminal Procedure which guarantee them a speedy trial.

### 4. WAIVER BY THE DEFENDANTS

■ The final factor to be considered is whether the defendants have waived their right to a speedy trial. Under this doctrine of waiver, a defendant cannot take advantage of delay which is due primarily to his own acts or to which he has consented. A defendant is considered to have consented to the delay if he does not make an early demand for trial. Thus, the right to a speedy trial is said to be a personal right and is deemed waived if not promptly asserted. United States v. Lustman, 258 F.2d 475 (2nd Cir. 1958), cert. den. 358 U.S. 880, 79 S.Ct. 118, 3 L.Ed.2d 109 (1958).

The waiver doctrine has been adopted in most of the federal circuits, and this Court is well aware that the Fifth Circuit Court of Appeals has also applied this rule. Bruce v. United States, supra, 351 F.2d 318 (5th Cir. 1965), cert. den. 384 U.S. 921, 86 S.Ct. 1370, 16 L.Ed.2d 441 (1966), reh. den. 384 U.S. 958, 86 S.Ct. 1575, 16 L.Ed.2d 553 (1966); Harlow v. United States, supra, 301 F.2d 361 (5th Cir. 1962), cert. den. 371 U.S. 814, 83 S. Ct. 25, 9 L.Ed.2d 56 (1962), reh. den. 371 U.S. 906, 83 S.Ct. 204, 9 L.Ed.2d 167 (1962).

However, we feel that the strict application of the waiver doctrine to defeat a defendant's motion under the Sixth Amendment, even in cases of extreme prejudice, leads to harsh results. If all depended on whether the defendant had demanded an early trial, there would be no reason to have four factors to consider. We are of the opinion that the defendants in this case have been greatly prejudiced by the long delay between the original indictment and the trial. It is our belief that this prejudice is so great that it outweighs the fact that the defendants did not request an early trial. As stated above, we think that the four factors are interrelated and must be considered together, so that if one or more of such factors are found to be extremely oppressive to the rights of a defendant, all four factors should not have to be resolved against the Government.

We are not alone in this opinion. Indeed, a definite trend away from the old, rather inflexible waiver rule appears to be forming. In several recent cases the burden to obtain a speedy trial is being shifted away from the defendant and onto the shoulders of the United States Attorney.

In 1966, the Court of Appeals for the District of Columbia Circuit expressed doubts about the dogmatic acceptance of the waiver rule when it said, "It must be borne in mind that the prosecution, not the defense, is charged with bringing a case to trial. The Government may not 'sit back' and then argue that defendant's inaction conclusively waived his right to a speedy trial." Hedgepeth v. United

States, 124 U.S.App.D.C. 291, 364 F.2d 684, 687–688 (1966).

In 1968, the American Bar Association disapproved of the inflexible doctrine of waiver in its Project on Minimum Standards for Criminal Justice. There, the ABA adopted the following view which was originally expressed in Note, 57 Colum.L.Rev. 846, 853 (1957):

"A strong minority, however, rejects the 'demand doctrine' and requires only a motion to dismiss filed before trial. These courts place the duty of procuring prompt trial upon the state, attributing significance to the fact that only the state is empowered to bring the charge to trial. Forcing defendant to press for speedy trial would, according to this view, enable the state to do nothing until defendant acts, and then, if he acts too late, to claim waiver."

One reason given for the acceptance of this position by the ABA was:

"[T]he demand requirement is inconsistent with the public interest in prompt disposition of criminal cases * * * [T]he trial of a criminal case should not be unreasonably delayed merely because the defendant does not think that it is in his best interest to seek prompt disposition of the charge." American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Speedy Trial, § 2.2 at 17.

This ABA standard was cited with approval by the court in United States v. Roberts, *supra*, 293 F.Supp. 195 (S.D. N.Y.1968). In this case, Judge Bonsal dismissed an indictment because of the violation of the defendant's right to a speedy trial, even though the defendant "at no time moved, formally or informally, for a speedy trial * * *." 293 F. Supp. at 197. In this opinion, Judge Bonsal stated:

"As to the asserted waiver by the defendant, it is true that, in United States v. Lustman, 258 F.2d 475, 478 (2d Cir.), cert. denied, 358 U.S. 880, 79 S.Ct. 118, 3 L.Ed.2d 109 (1958), the Court stated that 'the right to a speedy trial is the defendant's personal right and is deemed waived if not promptly asserted.'

"However, in United States v. Simmons, 338 F.2d 804, 807 (2d Cir. 1964), cert. denied, 380 U.S. 983, 85 S.Ct. 1352, 14 L.Ed.2d 276 (1965), the Court stated that 'four factors are relevant to a consideration of whether denial of a speedy trial assumes due process [or Sixth Amendment] proportions: the length of delay, the reason for the delay, the prejudice to defendant, and waiver by the defendant * * *,' quoting United States ex rel. Von Cseh v. Fay, 313 F.2d 620, 623 (2d Cir. 1963), wherein the Court also stated that 'these factors are to be considered together because they are interrelated.' And, as Judge Frankel recently pointed out in United States v. Mann, 291 F.Supp. 268 (S.D.N.Y., Oct. 9, 1968),

'if this fourth element [of waiver by the defendant] could by itself defeat the defendant in every case, it would certainly not be aptly described as being merely one of four "factors" to be weighed together.'

"If the presumption of innocence which cloaks every defendant until a guilty verdict is returned is to have meaning, a defendant should not be required to move for a prompt trial to establish his innocence. It is the Government 'which initiates the action and it is the [Government] which * * * likewise has the duty of seeing that the defendant is speedily brought to trial.' People v. Prosser, 309 N.Y. 353, 358, 130 N.E.2d 891, 895, 57 A.L.R.2d 295 (1955).

"In this regard, it has recently been recommended that 'the time for trial should commence running *without demand by the defendant* * * * from the date the charge is filed.' (Emphasis added.) ABA Project on Minimum Standards For Criminal Justice, Advisory Committee on the Criminal Trial, 'Standards Relating to Speedy Trial' § 2.2, at 16 (Tentative Draft,

May 1967). In the Commentary, the Advisory Committee notes that 'the demand requirement [by the defendant] is inconsistent with the public interest in prompt disposition of criminal cases.' ABA Project, id. at 17." 293 F.Supp. at 197–198.

In another recent case from the Southern District of New York, United States v. Mann, 291 F.Supp. 268, 274 (S.D.N.Y.1968), Judge Frankel dismissed an indictment on the ground that the defendant was deprived of his Sixth Amendment right to a speedy trial even though "defense counsel never came forward to announce he was 'ready' for trial, and never moved to dismiss the indictment for failure to put his client to trial until after the prosecution had proceeded finally toward the trial stage." At one point, Judge Frankel said:

"[C]ontrolling decisions state repeatedly the need in this area to appraise all the pertinent circumstances and, specifically, the four factors herein considered, only one of which is 'waiver.' If this fourth element could by itself defeat the defendant in every case, it would certainly not be aptly described as being merely one of four 'factors' to be weighed together." *Ibid.*

The waiver doctrine was questioned in United States v. Richardson, *supra*, 291 F.Supp. 441, 446 (S.D.N.Y.1968), still another decision out of the Southern District of New York, in which Judge Motley stated that the general presumption against waiver of constitutional rights should be applied in cases involving the right to a speedy trial:

"It is well to note at this point the doctrine of the Supreme Court on waiver of constitutional rights. ' "Courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and * * * 'do not presume acquiescence in the loss of fundamental rights.' " ' Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1923, 82 L.Ed. 1461, 146 A.L.R. 357 (1938). The Supreme

Court in the Johnson case held that the particular facts and circumstances surrounding a case, including the background, experience, and conduct of a defendant, are relevant to a determination of waiver or the absence thereof. The test of waiver was to be whether there was 'an intentional relinquishment or abandonment of a known right or privilege.' Id. This doctrine has been repeatedly affirmed by our highest court. See Glasser v. United States, 315 U.S. 60, 70–71, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); Brookhart v. Janis, 384 U.S. 1, 4, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1964); Miranda v. State of Arizona, 384 U.S. 436, 475, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

"The simplistic formulation of the 'demand' rule therefore, might seem to be in violation of these standards. It seems to presume acquiescence in a loss of the right to a speedy trial from the failure to assert such a right, and it does not allow an examination into the experience and background of a defendant. It neither requires any showing of a defendant's intent to waive his right nor demands any knowledge of this right from a defendant.

"There is no reason to suppose the standards enunciated in Johnson inapplicable to the Sixth Amendment right to a speedy trial. They are promulgated in general terms, being made applicable to any fundamental constitutional right. Three of the cases cited, supra, concern other Sixth Amendment rights—the right to counsel and the right of confrontation of witnesses. That the Supreme Court intends such standards of waiver to apply to the right to a speedy trial might be inferred from the recent case of Klopfer v. State of North Carolina, 386 U.S. 213, 223, 87 S.Ct. 988, 993, 18 L.Ed.2d 1 (1967): 'We hold here that the right to a speedy trial is as fundamental as any of the rights

secured by the Sixth Amendment.'" 291 F.Supp. at 446.

In view of the three preceding cases, another judge in the Southern District of New York, Judge Edelstein, stated the waiver rule in a modified form so as to preclude waiver when a defendant is suffering a specific prejudice:

"Under the leading cases in this jurisdiction, United States v. Lustman, 258 F.2d 475 (2d Cir.) cert. denied 358 U.S. 880, 79 S.Ct. 118, 3 L.Ed.2d 109 (1958), a defendant under the circumstances prevailing here—namely a defendant represented by counsel and suffering no specific or unusual prejudice—waives his Sixth Amendment right unless he requests a speedy trial." United States v. Tchack, supra, 296 F.Supp. 500, 502 (S.D.N.Y.1969).

Judge Edelstein cited the three Southern District of New York cases cited above as examples of cases which are exceptions to the waiver doctrine because "specific prejudice was shown to have injured defendant in the presentment of his defense." 296 F.Supp. at 502.

The ABA Project on Minimum Standards for Criminal Justice was cited as authority by the Eighth Circuit Court of Appeals in Hodges v. United States, 408 F.2d 543, 552 (8th Cir. 1969), for the following proposition of law:

"A defendant's waiver of his right to a speedy trial is not, in this day, readily to be assumed. Of course, waiver of that right is possible but mere inaction is not always automatically to be regarded as equating with waiver. See ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Speedy Trial, § 2.2, which refers to time running 'without demand by the defendant.'"

In United States v. Mark II Electronics of Louisiana, Inc., supra, 283 F.Supp. 280, 283–284 (E.D.La.1968), Judge Rubin dismissed the original indictment in this case under Rule 48(b) of the Federal Rules of Civil Procedure and said:

"[I]n some instances, 'to require a man to beg for a trial on such a charge, with its enormous penalty, requires too much of human nature.' United States v. Chase, N.D.Ill., 1955, 135 F.Supp. 230, 233 (indictment for murder). It is frequently true that 'it is unrealistic to force a man to demand the very thing which he is trying to avoid.'."

For the foregoing reasons, therefore, we are of the opinion that, considering the above four factors in light of all the circumstances of this case, the defendants' motions to dismiss the indictment with prejudice under the Sixth Amendment should be granted.

## II. RULE 48(b)

We also hold that the indictment should be dismissed under Rule 48(b) of the Federal Rules of Criminal Procedure, which provides:

"If there is unnecessary delay in presenting the charge to a grand jury or in filing an information against a defendant who has been held to answer to the district court, or if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information or complaint."

We are of the opinion that the delay was "unnecessary" within the scope of the rule for the reasons stated above in our discussion of the reasons for the Government's delay.

Our power to dismiss under Rule 48(b) is broader than that under the Sixth Amendment. In Mann v. United States, 113 U.S.App.D.C. 27, 304 F.2d 394, 398 (1962), the court said, "Rule 48(b) 'is a restatement of the inherent power of the court to dismiss a case for want of prosecution.' And that power is not circumscribed by the Sixth Amendment." In United States v. Mann, supra, 291 F.Supp. 268–275 (S.D.N.Y.1968), the court said, "It has been held that Criminal Rule 48(b), by providing for dismissal for 'unnecessary delay,' goes beyond the Sixth Amendment and supplies broader grounds for the exercise of discretion in dismissing indictments for want of prosecution." In United States

v. Mark II Electronics of Louisiana, Inc., 283 F.Supp. 280 (E.D.La.1968), Judge Rubin held that the question of whether or not the defendants waived their right to a speedy trial does not have to be considered in ruling on a motion to dismiss under Rule 48(b).

Therefore, we hold that the indictments against defendants James M. Scanlan and Charles Yuspeh should also be dismissed under Rule 48(b) of the Federal Rules of Criminal Procedure.