**UNITED STATES of America,
Plaintiff,**

v.

**George COLITTO, Defendant.**

**No. 70 CR 647.**

United States District Court,
E. D. New York.

Nov. 9, 1970.

Edward R. Neaher, U. S. Atty., E. D. New York, Brooklyn, N. Y., for plaintiff; Emanuel A. Moore, Asst. U. S. Atty., of counsel.

Milton Adler, Legal Aid Society, Brooklyn, N. Y., for defendant; Edward J. Kelly, Huntington Station, N. Y., of counsel.

## MEMORANDUM AND ORDER

WEINSTEIN, District Judge.

Pursuant to the Sixth Amendment of the Constitution and Rule 48(b) of the Federal Rules of Criminal Procedure, defendant moves for dismissal of the indictment claiming unnecessary post-arrest delay in presenting the charges to the grand jury—without justification and to his prejudice. The motion must be granted for the reasons indicated below.

### I

Defendant was arrested on September 15, 1969 for possession and transfer of unregistered firearms—two pipe bombs. 26 U.S.C. §§ 5861(d) (e), 5871. In November, 1969—between his appearance before the Commissioner and indictment in the Eastern District—defendant pleaded guilty in the Southern District of New York to a firearms violation charge. On January 15, 1970 he was sentenced to one year on this conviction.

After being imprisoned at Danbury, Connecticut until June 12, 1970, he was transferred to the Federal House of Detention in New York City where he completed the sentence on July 16, 1970. While still held in the House of Detention he was indicted in this Court on September 17, 1970—just over a year after his appearance before the Commissioner.

Defendant was represented by the same attorney both at his 1969 appearance before the Commissioner in the Eastern District and in the entire Southern District prosecution. In January, 1970 after sentencing in the Southern District, counsel notified defendant that he would not longer represent him in this Court. Thus, until Legal Aid was appointed following the September, 1970 indictment, defendant was incarcerated and without counsel.

### II

The Sixth Amendment right to a speedy trial is as fundamental as any of the other rights secured by the Constitution. Dickey v. Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970); Klopfer v. State of North Carolina, 386 U.S. 213, 223, 87 S.Ct. 988, 993, 18 L.Ed. 2d 1 (1967). Among its practical goals is prevention of undue and oppressive pretrial incarceration, minimization of the anxiety and concern accompanying public accusation and limitation of the possibility that long delay will impair the accused's ability to defend himself. United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 776, 15 L.Ed.2d 627 (1966); Smith v. Hooey, 393 U.S. 374, 378, 89 S.Ct. 575, 577, 21 L.Ed.2d 607 (1969). As the Supreme Court has reminded us, this right is designed to meet the practical realities of the effects of a criminal prosecution:

"The right to a speedy trial is not a theoretical or abstract right but one rooted in hard reality on the need to have charges promptly exposed. If the case for the prosecution calls on the accused to meet charges rather than rest on the infirmities of the prosecu-

tion's case, as is the defendant's right, the time to meet them is when the case is fresh. Stale claims have never been favored by the law, and far less so in criminal cases. Although a great many accused persons seek to put off the confrontation as long as possible, the right to a prompt inquiry into criminal charges is fundamental and the duty of the charging authority is to provide a prompt trial." Dickey v. Florida, 398 U.S. 30, 37–38, 90 S.Ct. 1564, 1568–1569 (1970).

Where arrest takes place before indictment, "there is substantial authority that the right [to a speedy trial] attaches upon arrest." Dickey v. Florida, 398 U.S. 30, 43, 90 S.Ct. 1564, 1572 (1970) (concurring opinion). *See also*, *e. g.*, Mathies v. United States, 126 U.S. App.D.C. 98, 374 F.2d 312 (1967); United States v. Sanchez, 361 F.2d 824, 825 (2d Cir. 1966); Ross v. United States, 121 U.S.App.D.C. 233, 349 F.2d 210 (1965); ABA, Standards Relating to Speedy Trial, 2.2, 3.1 (Approved Draft 1968); Note, The Right to A Speedy Trial, 20 Stan.L.Rev. 476, 482–493 (1968). *Cf.* Lucas v. United States, 363 F.2d 500, 502 (9th Cir. 1966). As one useful note points out:

> if the right to a speedy trial is designed to relieve an individual from lengthy imprisonment prior to trial and from the anxiety caused by public accusation, a refusal to extend its protective cloak to delays occurring between arrest and the filing of formal charges subverts its purpose. Such delays would seem to be just as capable of contributing to the inability of an individual to refute the charges against him as are delays occurring after indictment.

20 Stan.L.Rev. 476, 485 (1968).

██ ██ Whether a delay in prosecution represents a deprivation of these rights can be determined only by a realistic examination of all of "the circumstances" as they affect prosecutor and defendant. Pollard v. United States, 352 U.S. 354, 361, 77 S.Ct. 481, 486, 1 L.Ed.2d 393 (1957). The Second Circuit has emphasized four factors in determining whether a defendant's right to a speedy trial has been violated: "(1) the length of the delay; (2) the reason for the delay; (3) the prejudice to the defendant; and (4) waiver by the defendant." United States ex rel. Solomon v. Mancusi, 412 F.2d 88, 90 (2d Cir.), cert. denied, 396 U.S. 936, 90 S.Ct. 269, 24 L.Ed.2d 236 (1969). *See also* United States ex rel. Von Cseh v. Fay, 313 F.2d 620, 623 (2d Cir.), cert. denied, 365 U.S. 817, 81 S.Ct. 699, 5 L. Ed.2d 695 (1963); United States of America v. Garelle, slip sheet 53, 58 (2d Cir. 1970).

### a) *Length of Delay*

Length of delay is important primarily as it may affect other factors, particularly prejudice to the defendant. Note, The Right to A Speedy Trial, 20 Stan.L. Rev. 476, 478 (1968). Except where the period is so extremely long or short that prejudice or its lack can be assumed, special circumstances of the case will be decisive. Thus, periods of under a year have been found excessive where the delay prevented an adequate defense. *See, e. g.*, Ross v. United States, 121 U.S. App.D.C. 233, 349 F.2d 210 (1965) (7 month delay in charging defendant made it impossible for defendant to remember the day of crime); Woody v. United States, 125 U.S.App.D.C. 192, 370 F.2d 214 (1966) (4 month delay before arrest). By contrast, delays of four years and more have been held reasonable where the defendant acquiesced. *See, e. g.*, United States v. Lustman, 258 F.2d 475 (2nd Cir.), cert. denied, 358 U.S. 880, 79 S.Ct. 118, 3 L.Ed.2d 109 (1958) (four years not excessive where defendant was found to have waived his right); United States v. Della Rocca, 388 F.2d 525 (2d Cir.), vacated and remanded on other grounds, 390 U.S. 745, 88 S.Ct. 1443, 20 L.Ed.2d 274 (1968) (over 7 year delay between arrest and trial not excessive where defendant failed to assert his right for almost five years after indictment). The length of the delay in the instant case—one year—is sufficient

**1080**

to justify a dismissal of the indictment if the other factors warrant.

b) *Excuse for Delay*

■ The only excuse the government has been able to offer for its delay is a shortage of manpower caused by its own failure to appoint authorized personnel. Its brief states (at p. 2):

"During the course of the latter part of 1969, the United States Attorney's Office was seriously hampered in its efforts to move cases for presentment to the Grand Jury as its manpower had dwindled to six or seven assistants because of the change of administration."

Inefficiency or negligence of the Government is not a legal justification for a serious deprivation of a fundamental right. Dickey v. Florida, 398 U.S. 30, 51, 90 S.Ct. 1564, 1576, n. 17, 26 L.Ed.2d 26 (1970) (concurring opinion); Hanrahan v. United States, 121 U.S.App.D.C. 134, 348 F.2d 363, 368 (1965), cert. denied, 389 U.S. 845, 88 S.Ct. 95, 19 L.Ed. 2d 111 (1967); United States v. Reed, 285 F.Supp. 738, 741 (D.D.C.1968); ABA, Standards Relating To Speedy Trial, 2.3 (Approved Draft 1968).

Nor are we dealing in the case before us with delay justifiable by prosecutorial necessity as when there may be some reason to keep the prospective defendant from knowing he is under suspicion or when undercover sources are being protected. Pre-arrest delays in such circumstances are often justified. *See, e. g.,* Godfrey v. United States, 123 U.S. App.D.C. 219, 385 F.2d 850 (1966); Powell v. United States, 122 U.S.App. D.C. 229, 352 F.2d 705 (1965); United States v. Dickerson, 347 F.2d 783 (2d Cir. 1965); United States v. Kaufman, 311 F.2d 695 (2nd Cir. 1963); ABA, Standards Relating to Speedy Trial, 22–23 (Approved Draft 1968). *But cf.* Dickey v. Florida, 398 U.S. 30, 44–47, 90 S.Ct. 1564, 1572–1573, 26 L.Ed.2d 26 (1970) (concurring opinion). After arrest this justification normally does not lie. As the Court of Appeals in this Circuit has recognized:

Pre-arrest delay is usually free of the sometimes damaging effects of excessive post-arrest delay for until he has been arrested one has not been deprived of his freedom or been publicly accused. Moreover, there may be valid justification for a pre-arrest delay. Time-consuming investigation prior to an arrest minimizes the likelihood of accusing innocent parties and may facilitate the exposure of additional guilty persons. Once probable cause is established and an indictment filed, however, these justifications are of decreasing importance; the accusation has already been made, the prosecution has gathered at least a modicum of evidence, and news of the arrest will cause other implicated parties to take cover.

United States v. Feinberg, 383 F.2d 60, 64–65 (2nd Cir. 1967). As far as practical consequences are concerned, the words "arrested and held to answer" can be substituted for "indictment filed" in the Court of Appeals statement.

c) *Prejudice to Defendant*

While it might seem that a person in prison would suffer no substantial prejudice because of a delay in lodging an indictment against him, the Supreme Court has realistically concluded "that delay in bringing such a person to trial on a pending charge may ultimately result in as much oppression as is suffered by one who is jailed without bail upon an untried charge." Smith v. Hooey, 393 U.S. 374, 378, 89 S.Ct. 575, 577, 21 L.Ed.2d 607 (1969).

■ Delay has deprived defendant of the possibility of a sentence which might have run concurrently with that imposed by the Southern District. Furthermore, the outstanding charge materially altered his chance of an earlier parole on the Southern District sentence and he may have been denied trustee status because of this charge. The practice is to deny

parole and trustee status to a prisoner who has been arrested for a serious crime when the charges are unresolved. *See* Smith v. Hooey, 393 U.S. 374, 378–379, 89 S.Ct. 575, 577, 21 L.Ed.2d 607 (1969); ABA, Standards Relating to Speedy Trial, 43 (Approved Draft 1968). In addition, the record indicates that the defendant spent from July 16, 1970—when he completed his Southern District sentence—to September 17, 1970 in the Federal House of Detention on this charge while he was neither indicted for, nor convicted of, any criminal offense.

There is "reason to believe that an outstanding charge (of which even a convict may, of course, be innocent) can have fully as depressive an effect upon a prisoner as upon a person who is at large." Smith v. Hooey, 393 U.S. 374, 379, 89 S.Ct. 575, 577, 21 L.Ed.2d 607 (1969). "The prison administrator is hampered in his efforts toward rehabilitation since the inmate * * * may suffer from anxiety * * * and not respond to training." ABA, Standards Relating to Speedy Trial, 43 (Approved Draft 1968).

The prejudice resulting to this imprisoned defendant as a result of this delay is clear.

d) *Waiver*

■ Waiver presents a special problem in this Circuit. Like any surrender of a constitutional right, an implied waiver through silence is not to be lightly inferred. Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966); Glasser v. United States, 315 U.S. 60, 70, 62 S.Ct. 457, 465, 86 L.Ed. 680 (1942); United States v. Dillon, 183 F.Supp. 541, 543 (S.D. N.Y.1960). Waiver in delay-of-prosecution cases is implied only where the facts, and the fair inferences based upon the court's knowledge of trial tactics, permit the inference that relinquishment was deliberate and knowledgeable. Thus, for example, in the leading case of United States v. Lustman, 258 F.2d 475 (2d Cir.), cert. denied, 358 U.S. 880, 79 S.Ct. 118, 3 L.Ed.2d 109 (1958), the Second Circuit adopted the so-called "demand" doctrine assuming waiver in the absence of a demand for a speedy trial. In *Lustman* negotiations between counsel for defendant and government as well as other factors suggested a deliberate acquiescence in the prosecutor's decision not to press the case.

The automatic-waiver rule has been applied by this Circuit in a variety of situations since *Lustman*. Almost all involve a waiver after indictment predicated upon availability of counsel and desirable post-indictment motion practice. Where the delay occurs exclusively during the post-indictment period, as in *Lustman*, a prompt demand by the defendant for trial has consistently been required. *See, e. g.*, United States v. Santos, 372 F.2d 177 (2d Cir. 1967); United States v. Maxwell, 383 F.2d 437 (2d Cir. 1967), cert. denied, 389 U.S. 1057, 88 S.Ct. 809, 19 L.Ed.2d 856 (1968). By a parity of reasoning, where there has been a preindictment delay coupled with a post-indictment delay the court has concluded that the defendant waived his objection to the delay in both periods by failing to make a demand promptly after indictment. *See, e. g.*, United States v. Van Allen, 288 F.2d 825 (2d Cir.), cert. denied, 368 U.S. 836, 82 S.Ct. 31, 7 L.Ed.2d 37 (1961); United States v. Della Rocca, 388 F.2d 525 (2d Cir.), vacated and remanded on other grounds, 390 U.S. 745, 88 S.Ct. 1443, 20 L.Ed.2d 274 (1968); United States v. Kabot, 295 F.2d 848 (2d Cir. 1961), cert. denied, 369 U.S. 803, 82 S.Ct. 641, 7 L.Ed. 2d 550 (1962). Finally, regardless of when the delay occurred, the Court of Appeals has required that the defendant raise his speedy trial objection prior to, or at least at, trial. It will not consider the claim when it is asserted for the first time on appeal. *See, e. g.*, Chapman v. United States, 376 F.2d 705 (2d Cir.), cert. denied, 389 U.S. 881, 88 S.Ct. 119, 19 L.Ed.2d 174 (1967); United States v. Smalls, 363 F.2d 417 (2d Cir. 1966), cert. denied, 385 U.S. 1027, 87 S.Ct. 755, 17

L.Ed.2d 675 (1967); United States v. Moore, 373 F.2d 547 (2d Cir. 1967).

There is a "definite trend away from the old, rather inflexible waiver rule." United States v. Mark II Electronics of Louisiana, 305 F.Supp. 1280, 1284 (Ed.D. La.1969). Waiver is properly only one factor to be weighed in light of the length of the delay, reason for it, and prejudice to the defendant. If an implied waiver could, by itself, be determinative of speedy trial claims, federal courts would not have consistently reiterated that all four interrelated factors must be considered. See United States v. Blanca Perez, 310 F.Supp. 550, 553 (S.D. N.Y.1970); United States v. Chin, 306 F.Supp. 397, 399–400 (S.D.N.Y.1969); United States v. Mark II Electronics of Louisiana, 305 F.Supp. 1280, 1284–1287 (E.D.La.1969); United States v. Roberts, 293 F.Supp. 195, 197 (S.D.N.Y. 1968); United States v. Mann, 291 F. Supp. 268, 274–275 (S.D.N.Y.1968).

The demand rule has seldom been applied to a case of extensive preindictment delay where an objection to the delay was asserted promptly after indictment was returned. Cf. United States v. Kaufman, 311 F.2d 695, 698 (2d Cir. 1963), where the issue of waiver arose only with respect to the post-indictment delay and there was good cause for the preindictment delay; United States v. Fassoulis, 179 F.Supp. 645, 647 (S.D.N.Y.1959), aff'd, 293 F.2d 243, 246 (2d Cir.), cert. denied, 368 U.S. 919, 82 S.Ct. 240, 7 L.Ed. 2d 134 (1961), where there was apparently no prejudice and defendant was at liberty throughout the period of the delay; United States v. McCorkle, 413 F.2d 307 (7th Cir. 1969), where the defendant had full notice of charges, was free on bail, and could show no prejudice; United States v. Delman, 253 F.Supp. 383 (S.D.N.Y.1966), where defendant was represented by counsel who never objected to any of nearly fifty adjournments of the preliminary examination; and United States v. Jamin, 222 F.Supp. 678 (S.D. N.Y.1962).

An examination of the rationale of United States v. Lustman, 258 F.2d 475 (2d Cir.), cert. denied, 358 U.S. 880, 79 S.Ct. 118, 3 L.Ed.2d 109 (1958), reveals that any application of a rigid demand rule to a long preindictment delay is inappropriate. The crux of the court's opinion in *Lustman* was its recognition that criminal defendants frequently welcome delay and that they ought not be permitted to sit idly by reaping the benefits of prosecutorial inaction and later be permitted to use the right to a speedy trial as a means of escaping prosecution.

■ This rationale of waiver through silence should not apply to delays occuring solely during the preindictment period. At this stage the defendant cannot be said to be reaping the benefits of delay. The fact is that prior to indictment he does not even know the exact nature of the charges which will be brought against him or if, in fact, an indictment will ever be returned. In the absence of prompt indictment an arrested accused would often be justified in assuming that the government had elected not to proceed or that the grand jury had refused to act. See United States v. Skinner, 308 F.Supp. 1221 (S.D.N.Y.1969). We take judicial notice of what the defense bar knows, that in many instances where a prosecution might lie, the government decides not to prosecute. See K. Davis, Discretionary Justice: A Preliminary Inquiry 188–214 (1969).

When an indictment is finally returned and his objection to the lengthy delay is promptly asserted the defendant is not using the right to a speedy trial "as a sword for the defendant's escape, but rather as a shield for his protection." Note, The Right To A Speedy Trial, 57 Colum.L.Rev. 846, 853 (1957), cited with approval in United States v. Lustman, 258 F.2d 475, 478 (2d Cir.), cert. denied, 358 U.S. 880, 79 S.Ct. 118, 3 L.Ed.2d 109 (1958).

It is unreasonable to expect a defendant, except in the most unusual case, for instance where a public figure requires

immediate vindication if his career is not to be destroyed, to demand that he be indicted. United States v. Hunter Pharmacy, 213 F.Supp. 323 (S.D.N.Y.1963); United States v. Mark II Electronics of Louisiana, 283 F.Supp. 280 (E.D.La. 1968). *Cf.* 57 Colum.L.Rev. 846, 853, nn. 47, 48 (1957).

■ Responsibility for expediting criminal proceedings is usually shared by the court, defense, and prosecution. Hodges v. United States, 408 F.2d 543, 551 (8th Cir. 1969). Necessarily, however, almost the entire burden for pressing criminal cases at the preindictment stage rests with the government. The individual assignment system adopted by this District specifically provides for more active court control over the progress of cases once a plea to an indictment has been entered, but at the preindictment stage there is no case to assign. Unless we began supervision at an earlier stage—a step we would be loath to take because it would involve us in investigative and administrative stages—the court is denied any control. Defense counsel is also at a serious disadvantage in any effort to assure a speedy disposition until an indictment is returned. He knows neither the status of the case nor the government's intentions. As already noted, for all he knows an indictment may never be requested or the grand jury may already have refused to return one; he certainly cannot be expected to attempt to force the government to indict his client. Furthermore, investigation and preparation of a case is very difficult because the precise charge is not determined.

The fact that the United States Attorney for the Southern District of New York was proceeding with another prosecution while the Eastern District charge lay dormant is not without persuasive significance. The defendant might well have been led to believe that *the* government was aware of what was going on in both districts and was satisfied that one punishment constituted sufficient payment for all defendant's known transgressions. This belief may explain his counsel's dropping out of the Eastern District case shortly after the Southern District sentence. "In the light of what occurred * * * the defendant had no reason to believe that" another indictment would be returned. People v. Prosser, 309 N.Y. 353, 358, 130 N.E.2d 891, 896 (1955).

In sum, the *Lustman* rule construing lack of demand for trial as a waiver of the right to speedy trial should not apply to delays after arrest and before indictment if a motion to dismiss is made promptly after indictment.

■ Even were we to assume that the *Lustman* rule were applicable to preindictment delays, this defendant clearly falls within the exceptions recognized in *Lustman*. The court assumed that a defendant would not be deemed to have waived his delay objections when he was not in a position to properly claim his rights because of imprisonment, ignorance, lack of legal advice or similar reason. United States v. Lustman, 258 F.2d 475, 478 (2nd Cir.), cert. denied, 358 U.S. 880, 79 S.Ct. 118, 3 L.Ed.2d 109 (1958). *See* Note, The Right To A Speedy Trial, 57 Colum.L.Rev. 846, 855 (1957). Cf. Tigar, Forward: Waiver of Constitutional Rights: Disquiet in the Citadel, 84 Harv.L.Rev. 1 (1970). Defendant here was both imprisoned and—during most of the period of delay—without legal advice. He cannot be deemed to have waived his rights even under the Second Circuit demand rule. *See* Pitts v. North Carolina, 395 F.2d 182 (4th Cir. 1968); United States v. Richardson, 291 F.Supp. 441 (S.D.N.Y.1968).

### III

It cannot be argued that prior to indictment a reasonable statute of limitations provides the sole constitutional measure of permissible Sixth Amendment delay. *See, e. g.*, United States v. Feinberg, 383 F.2d 60, 64–65 (2d Cir. 1967); Ross v. United States, 121 U.S.

**1084**

App.D.C. 223, 349 F.2d 210 (1965). "The presence of this statute does not mean that the government may blissfully defer a prosecution \* \* \*." Hodges v. United States, 408 F.2d 543, 550 (8th Cir. 1969). Though the Sixth Amendment and statutes of limitations have overlapping aims—protection against stale claims—they are not completely congruent. *See* Note, The Right To A Speedy Trial, 20 Stan.L.Rev. 476, 491–492 (1968). "Prejudicial or deliberate delay may deprive a defendant of his constitutional rights" even though the indictment is brought within the statutory period. United States v. Coppola, 296 F.Supp. 903, 905 (D.Conn.1969). Before an arrest the statute of limitations, at least prima facie, provides sufficient protection. After an arrest, the situation has changed radically. The prosecution, by its act, indicates that it is aware of the crime and the criminal and is prepared to proceed so that it no longer needs the time afforded by the statute. The defendant, having been publicly charged, is placed under "anxiety and concern accompanying public accusation." United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 776, 15 L.Ed.2d 627 (1966). As the instant case indicates, he may suffer substantial other prejudice.

The difference between pre and post arrest situations is recognized by Subdivision (b) of Rule 48 of the Rules of Criminal Procedure which applies only after a defendant "has been held to answer." United States v. Miller, 259 F. Supp. 294, 296 (E.D.Pa.1966). It reads:

> If there is unnecessary delay in presenting the charge to a grand jury or in filing an information against a defendant who has been held to answer to the district court, or if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information or complaint.

### IV.

The indictment must be dismissed.

So ordered.