## UNITED STATES
### v.
### Howard G. LOCKWOOD.
#### No. CR 43456.*

United States District Court,
E. D. New York.

Nov. 26, 1974.

See also D.C., 382 F.Supp. 1111.

---

\* And 25 Additional Cases Involving the Following Defendants: Dewey, 66–Cr–456; Lidov, 68–Cr–67; Rosenbaum, 68–Cr–204; Friedman, 69–Cr–54; Dorn, 69–Cr–57; Wilson, 69–Cr–155; Campus, 69–Cr–182; Henry, 71–Cr–1338; Blumer, 72–Cr–478; Austin, 72–Cr–494; Territo, 72–Cr–622; Parker, 72–Cr–739; Salzmann, 72–Cr–740; Sleeth, 72–Cr–757; Higgs, 72–Cr–780; Perez, 72–Cr–803; Martinez, 72–Cr–810; Luerssen, 72–Cr–824; Frazier, 72–Cr–834; Collura, 72–Cr–1028; Bezousek, 72–Cr–1290; Estremera, 72–Cr–1291; Nolan, 73–Cr–41; Powers, 73–Cr–126; Albanese, 73–Cr–132.

David G. Trager, Brooklyn, N. Y., U. S. Atty., E. D. N. Y., for plaintiff; Edward R. Korman, Thomas Maher, Brooklyn, N. Y., of counsel.

Louis Lusky, New York City, for defendants.

Michael E. Tigar, Williams, Connolly & Califano, Washington, D. C., amicus curiae.

### MEMORANDUM AND ORDER

WEINSTEIN, District Judge.

Counsel for twenty-six defendants accused of violating the selective service law moves to dismiss the indictments on the ground that all the defendants have been denied their right to a speedy trial. Amicus suggests that there is a strong likelihood that some or all of the indictments are not well founded under the selective service law. Until each defendant's situation has been examined separately, dismissal on these grounds will

not lie. As indicated below, the government has been directed to supply counsel with copies of the selective service file in each case to facilitate the necessary individual determination.

[1] As additional grounds for dismissal of the indictments defendants claim that the Selective Service Act and regulations are unconstitutional as applied to these cases, in that they (1) provide for military conscription for service in wars not declared by Congress pursuant to Article I, Section 8, Clause 11 of the United States Constitution, and (2) provide for such conscription in the absence of either a declaration of war by Congress or a national emergency so grave and imminent as to justify peacetime conscription without such a declaration of war. While these claims have not yet been passed upon by the United States Supreme Court, similar claims have been rejected by the Second Circuit Court of Appeals in Orlando v. Laird, 443 F.2d 1039 (1971), cert. denied, 404 U.S. 869, 92 S.Ct. 94, 30 L.Ed.2d 113 (1971) (Douglas and Brennan, JJ., dissenting), and in Da Costa v. Laird, 448 F.2d 1368 (1971), cert. denied, 405 U.S. 979, 92 S.Ct. 1193, 31 L.Ed.2d 255 (1972) (Douglas and Brennan, JJ., dissenting). Being controlled by the decisions of the Second Circuit, these additional claims must be denied by this court without an independent consideration of their merit.

## I.

### DELAY IN BRINGING THESE CASES TO TRIAL

One of the indictments in these cases has been pending since 1954; the others were handed up at various times between 1966 and 1973, the most recent having been filed with the clerk on February 6, 1973. During this period the government has made desultory efforts to apprehend the defendants by mailing notices to addresses once listed in selective service records and by occasional inquiries through the Federal Bureau of Investigation.

## II.

### SPEEDY TRIAL RULES

No claim has been made of a violation of the Eastern District of New York's Plan for Achieving Prompt Disposition of Criminal Cases. Effective April 1, 1973, it was designed "to further the prompt disposition of criminal cases." According to this Plan the government must be ready for trial within six months, excluding delay resulting from the absence or unavailability of the defendant. On the basis of information now available it cannot be said that the defendants were available for trial. Cf. United States v. Rollins, 487 F.2d 409 (2d Cir. 1973); United States v. Flores, 501 F.2d 1356 (2d Cir. 1974). Counsel instead relies upon defendants' constitutional right to a speedy trial as guaranteed by the Sixth Amendment.

## III.

### SIXTH AMENDMENT

The right to a speedy trial has long been considered fundamental. See the dissertation of Chief Justice Warren in Klopfer v. North Carolina, 386 U.S. 213, 224, 87 S.Ct. 988, 994, 18 L.Ed.2d 1 (1967).

Recognizing that a time within which a trial must be had cannot be fixed for all cases with uniformity and precision, Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), mandates an analysis of the practical and theoretical aspects of the right to a speedy trial in the context of each individual case. Laid down was a balancing test requiring a weighing of the conduct of both the prosecution and the defendant on scales calibrated to reflect the interests of defendants, society and the Constitution.

Four factors must be assessed in determining whether a particular defendant has been deprived of his right: the length of the delay, the reason for the delay, the defendant's assertion of his right, and the prejudice to the de-

fendant. 407 U.S. at 530, 92 S.Ct. at 2187. The Supreme Court regarded none of these factors as decisive.

"Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process." 407 U.S. at 533, 92 S.Ct. at 2193.

See also, e. g., United States v. Lasker, 481 F.2d 229, 237 (2d Cir. 1973), cert. denied, 415 U.S. 975, 94 S.Ct. 1560, 39 L.Ed.2d 871; United States v. Infanti, 474 F.2d 522, 527 (2d Cir. 1973); United States v. Counts, 471 F.2d 422, 426–427 (2d Cir.), cert. denied, 411 U.S. 935, 93 S.Ct. 1909, 36 L.Ed.2d 395 (1973); United States v. Fasanaro, 471 F.2d 717 (2d Cir. 1973); United States v. Colitto, 319 F.Supp. 1077 (E.D.N.Y.1970).

Certainly the length of delay in prosecuting these indictments is sufficient to cause us to inquire into the other factors that go into the balance. The delay, of course, is mitigated by the reason for the delay—in this case, the government's alleged inability to bring the defendants before the court.

Defense counsel argues that the government did not prosecute these defendants with due diligence in two respects. First, it contends that the return of the defendants was not sought through diplomatic channels. As recently as 1972, it was reported, and not denied, that the government did not request other governments to extradite or deport selective service indictees. See Gosfield, American War Resisters, 5 N.Y.U.J.Int'l L. & Pol. 503, 522 (1972). It is urged that the standard used by the Supreme Court in Smith v. Hooey, 393 U.S. 374, 393, 89 S.Ct. 575, 579, 21 L.Ed.2d 607 (1969), where the Court decided that it was a state's duty to bring to trial a defendant incarcerated by authorities beyond its territorial jurisdiction, should be applied here. The situations, however, are not analogous. The practical relationship between state authorities and between state and federal authorities differs from that between our government and a foreign government. Id. at 380–381, 89 S.Ct. at 578–579.

Moreover, the political climate existing at the time must be considered in judging the reasonableness of the government's efforts. We take judicial notice of the fact that the governments and populace of the countries in which many draft fugitives sought asylum had expressed antipathy toward this country's participation in the Vietnam war. See, e. g., N.Y. Times, Nov. 3, 1974, § 6 (Magazine), 51, 66. American public opinion was also divided. Pressing strenuously for extradition might have seriously exacerbated feelings of hostility both at home and abroad. Given the serious doubt about whether any extradition treaty applied to what these other countries may have considered political rather than criminal offenses, the decision not to seek extradition in all cases does not appear unreasonable. See generally 2 A Treatise on International Criminal Law 309–355 (M. C. Basiouni & V. Nanda eds. 1973) (military and political offenses generally not extradictable); Tate, Draft Evasion and the Problem of Extradition, 32 Albany L.Rev. 337, 355–57 (1968) (political offenses not extradictable). These factors, while not directly relevant to those normally associated with delays in the administration of justice—e. g., absence of witnesses and calendar congestion—do have a bearing on the bona fides of the government's action.

Nevertheless, the government's decision not to utilize legal process to attempt to return these fugitive defendants must be weighed against the importance of individual rights. The right to a speedy trial cannot be ignored merely because the government determines that extradition or other procedures are inconvenient or unavailable. In some situations, the Supreme Court has ruled that where individual rights are at stake, the government, unless it adheres to constitutionally mandated procedures, must

suffer a dismissal of its indictment. Alderman v. United States, 394 U.S. 165, 183, 89 S.Ct. 961, 972, 22 L.Ed.2d 176 (1969). In other cases, such as that involving the disclosure of an informant's identity, the court has found that there is no fixed rule: "The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense." Roviaro v. United States, 353 U.S. 53, 62, 77 S.Ct. 623, 628–629, 1 L.Ed.2d 639 (1957). *See also* United States v. Reynolds, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953); United States v. Fernandez, 506 F.2d 1200 at 1202 (2d Cir. 1974). Since, as we have noted, the second approach, calling for the balancing of a number of factors, is to be applied to speedy trial contentions, the government's action, or inaction, is not conclusive.

Second, defense counsel asserts that the government had a duty to seek out the defendants with all the investigative resources at its command and to summon before a grand jury parents, relatives, and friends, to testify as to the whereabouts of the accused. Courts have not, in general, recognized any privilege of a mother, father, relative or friend to refuse to testify on grounds analogous to those underlying the husband-wife privilege. Yet, the absence of any such rule of privilege should not be construed as a prosecutorial imperative to place parents and friends in such a difficult and con-science-taxing position. *Cf.* Branzburg v. Hayes, 408 U.S. 665, 707–708, 92 S.Ct. 2646, 2670, 33 L.Ed.2d 626 (1972). The essence of justice includes not only an adherence to legal rules, but an element of compassion. *See generally* Jones, An Invitation to Jurisprudence, 74 Colum.L. Rev. 1023, 1050–53. *Cf.* In re Kinoy, 326 F.Supp. 400, 405, n. 9 (S.D.N.Y. 1970). The logic of the right to a speedy trial should not be pushed to an unnecessary extreme so that justice becomes an uncontrollable juggernaut, crushing the innocent bystander as well as the guilty.

Under the circumstances thus far brought to the court's attention, it does not appear that the delay in bringing these defendants to trial was caused either by the negligence or the inefficiency of the government. Nor was there, so far as the record now shows, a deliberate effort on the part of the government to delay all these trials. *See* Barker v. Wingo, *supra*, 407 U.S. at 531, 92 S.Ct. at 2182; Pollard v. United States, 352 U.S. 354, 361, 77 S.Ct. 481, 486, 1 L.Ed. 2d 393 (1957); United States v. Infanti, *supra*, 474 F.2d at 527; United States v. Stein, 456 F.2d 844 (2d Cir. 1971), cert. denied, 408 U.S. 922, 92 S.Ct. 2489, 33 L.Ed.2d 333, reh. denied, 409 U.S. 898, 93 S.Ct. 101, 34 L.Ed.2d 157 (1972). We take judicial notice of our own court records establishing that where defendants have appeared, the government has prosecuted selective service cases no less expeditiously than other kinds of cases.

The remaining factors to be considered in the balance are the defendant's assertion of his speedy trial right and the prejudice to the defendant. Although we do not find that defendants have waived their speedy trial claim, they have not heretofore asserted their right. This factor is not conclusive but the Supreme Court indicated in *Barker* that it is entitled to great weight:

"Whether and how a defendant asserts his right is closely related to the other factors we have mentioned. The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely a defendant is to complain. The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." 407 U.S. at 531–532, 92 S.Ct. at 2192.

*See also* United States v. Macino, 486 F. 2d 750, 753 (7th Cir. 1973). *Cf.* United States v. Holt, 145 U.S.App.D.C. 185, 448 F.2d 1108, 1111 cert. denied, 404 U.S. 942, 92 S.Ct. 292, 30 L.Ed.2d 257 (1971).

We must also consider the fact that these defendants may not have been aware of their rights. We take judicial notice of the fact that many young men indicted under the Selective Service Act were without counsel. It is, therefore, likely that they did not know that they were entitled to a speedy trial or that the failure to promptly demand one might have serious adverse consequences. *See* United States v. Butler, 426 F.2d 1275, 1278 (1st Cir. 1970), cert. denied, 401 U.S. 978, 91 S.Ct. 1207, 28 L.Ed.2d 328 (1971); Coleman v. United States, 142 U.S.App. D.C. 402, 442 F.2d 150, 155 (1971).

Prejudice to the accused is not insubstantial. The anxiety and concern caused by these indictments to the defendants, their families and friends, is significant. *See* United States v. Marion, 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed. 2d 468 (1971); Note, The Right to a Speedy Trial, 57 Colum.L.Rev. 846, 864 (1957). In addition, the ability of these defendants adequately to prepare their cases may have been affected.

In each case the factors to be weighed may balance differently. In light of all the relevant considerations thus far brought to the court's attention, it cannot be said that a blanket motion to dismisss all these cases on the ground of denial of a speedy trial can be granted. Facts to be developed in the individual cases will be considered with those already brought to the court's attention by defense counsel should motions be renewed in the individual cases.

## IV.

## VALIDITY OF INDIVIDUAL INDICTMENTS

The court has an independent obligation to review the current status of all indictments on its calendar, and to dismiss those which are clearly in-

valid. United States v. Lockwood, 382 F.Supp. 1111, 1112–1113 (E.D.N.Y. 1974); United States v. Kibbe, Cr. No. H–150 (D.Conn.1974); United States v. Boyer, Cr. No. 12324 (D. Hawaii, 1974). *See also* District of Columbia v. Horning, 47 U.S.App.D.C. 413 (1918). This obligation is essentially one of speedily and justly determining every case before the court, and is independent of, and to some extent may be contrary to, the defendant's wishes in the matter. Barker v. Wingo, 407 U.S. 514, 521, 92 S.Ct. 2182, 2187, 33 L.Ed.2d 101 (1972); Dickey v. Florida, 398 U.S. 30, 37–38, 90 S.Ct. 1564, 1569, 26 L.Ed.2d 26 (1970).

In Hodges v. United States, 408 F.2d 543, 551 (8th Cir. 1969), the court observed that the right to a speedy trial is constitutionally guaranteed and as such is not to be honored only for the vigilant and the knowledgeable: "[T]he trial court, which is the neutral arbiter for the defense as well as for the prosecution, must do all it can to keep its criminal dockets current." *See also* United States v. Mann, 291 F.Supp. 268 (S.D.N.Y.1968).

The considerations advanced by this court in its prior opinion suggest that there is an obligation to look beyond the face of these indictments to determine their validity. As we stated, "[t]he possibility that a selective service indictment will not be supported by the record is not insubstantial." United States v. Lockwood, *supra* 382 F.Supp. at 1115. In order to determine if these indictments have any merit each defendant's selective service file must be examined.

A further consideration arises from the unique nature of selective service cases. In criminal prosecutions involving selective service registrants who have refused to submit to induction, judicial review of a classification determination by a draft board must be based only upon material in the registrant's file. *See, e. g.,* Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955); Cox v. United States, 332 U.S.

442, 453–455, 68 S.Ct. 115, 120–121, 92 L.Ed. 59 (1947), reh. denied, 333 U.S. 830, 68 S.Ct. 449, 92·L.Ed. 1115 (1948); United States ex rel. Checkman v. Laird, 469 F.2d 773 (2d Cir. 1972); United States v. St. Clair, 293 F.Supp. 337 (E.D.N.Y.1968).

■ The court recognizes that there is an interest in the confidentiality of these files. This interest, however, must· yield to the public interest in having essential evidence relating to a defense in a criminal case considered by the court. *Cf.* Mackay v. United States, 122 U.S.App.D.C. 97, 351 F.2d 794 (1965) (police records); United States v. Abbott, 425 F.2d 910, 913, n. 4 (8th Cir. 1970) (selective service registrant's right to see ·file); Sheats v. United States, 215 F.2d 746 (10th Cir. 1954) (same). *Cf.* United States v. United States Gypsum, 383 F.Supp. 462 (W.D.Pa.1974). It is partly for this reason that defense counsel has an absolute right to see the selective service files pertaining to his client.

In United States v. Abbott, 425 F.2d 910, 913, n. 4 (8th Cir. 1970), the court stated:

"It is well settled that a registrant is entitled to know the content of his file so as to be aware of any adverse evidence therein. . . . Fundamental due process requires that the defendant be entitled to either know or be able to infer from the file itself the basis for the rejection of· a . . . claim."

Moreover, to the extent that the files may provide a basis for dismissing these cases, their production is counseled, if not mandated, by Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

Recognizing this right to see the files, the policy of the Selective Service System is to ensure that an indicted registrant be provided with a copy of his file in order to adequately prepare his defense. 32 CFR § 1608.3(e) provides in relevant part:

"Where a registrant has been indicted under the military Selective Service Act and must defend himself in a criminal prosecution . . . to test the validity of his induction, it is the policy of the Selective Service System to furnish, to him or to any person he may designate, one copy of his selective service file free of charge."

■ Indictments in selective service cases in this district are based almost entirely on the file. Thus, where the validity of an indictment is being questioned, the defendant or his appointed counsel is entitled to examine the registrant's file.

■ The issue of validity of the indictment may be congruent with the general issue, as the government suggests. *See* United States v. Cesaletti, F.Supp. (D.N.J.1974). But since selective service prosecutions consist essentially of judicial review of an administrative record, the court can determine the legal validity of the indictments without trying the issue or providing a defense of double jeopardy.

Once counsel has examined each selective service file, he may present the court with additional information sufficient to alter the weight of the variables in the speedy trial equation. In addition, other factors may be revealed as a basis for the dismissal of these indictments. For example, courts have found that the pre-indictment delay in selective service cases before them violated the special statutory mandate regarding the prosecution of selective service cases. 50 U.S.C.App. § 462(c). *See* United States v. Daneals, 370 F. Supp. 1289 (W.D.NY.1974); United States v. Golon, 378 F.Supp. 516 (D. Mass.1974).

One decision, United States v. Dyson, 469 F.2d 735 (5th Cir. 1972), involved a 22 month delay, during which the defendant was available, between indictment and trial. The court found that 50 U.S.C.App. § 462(a) which directs that "[p]recedence shall be given by courts to the trial of cases arising under this title, and such cases shall be advanced on the docket for immediate

hearing" had been violated. The government argues that this statute was not intended to afford a delinquent registrant a defense to an indictment for violating the Selective Service Act. The court in *Dyson,* however, noted that: "Draft refusers could expect to be brought to book quickly, but likewise they had the right to demand similar expedition of the awesome criminal sanction." *Id.* at 738.

We make no determination regarding the applicability of these statutes or decision to the twenty-six cases before us. We cite them merely as an example of the kind of considerations which may become significant once individual files are assessed.

## V.

## CLASS ACTION STATUS

 Counsel's general motion to dismiss these indictments constitutes, in effect, a determination to handle these cases in a multi-party proceeding, similar to a class action. Although the equivalent of a class action might lie in a case such as this, *see, e. g.,* United States ex rel. Lois Sero v. Preiser, 506 F.2d 1115 at 1125–1127 (2d Cir. 1974), the court has a degree of discretion in determining whether to review each case individually or to decide them as a group.

Thousands of similar indictments are pending across the country. At least two other district courts are considering their validity, despite the fact that the defendants are fugitives. United States v. Kibbe, Cr. No. H–150 (D.Conn.1974); United States v. McKinney, Cr. S–1203 (E.D.Calif.1974); United States v. Boyer, Cr. No. 12324 (D. Hawaii 1974). At this time it would be inappropriate to treat these cases as a class for two reasons. First, further study of each individual case may bring to light new considerations, beyond the speedy trial claim, which may affect not only that indictment, but which may also be relevant to the entire group. Second, although some form of class action might be desirable, the *stare decisis* effect of an appellate court decision granting defense counsel's motion in an individual case would be the equivalent of a class action disposition, whereas a determination by a District Court would not have the same weight. Moreover, when an important constitutional issue is raised which may require Appellate and Supreme Court adjudications, it is particularly appropriate to develop individual records for the benefit of the reviewing court.

## CONCLUSION

Defendants' motion is denied with leave to renew. In order to properly determine the validity of the charges brought against these defendants, the selective service files shall be made available to defense counsel. This will permit them to make motions in each case should they believe it appropriate to do so.

The court recognizes that such an examination of so many files places an onerous burden upon counsel. If defense counsel desires aid, the court will entertain a motion to take appropriate ameliorative action.

So ordered.