The PEOPLE of the State of Colorado,
Plaintiff-Appellee,

v.

John L. ARAGON, Defendant-Appellant.

No. 79CA0395.

Colorado Court of Appeals,
Div. II.

Aug. 7, 1980.

Rehearing Denied Sept. 4, 1980.

Certiorari Granted Dec. 22, 1980.

J. D. MacFarlane, Atty. Gen., Frederick Y. Yu, Designated Counsel, Denver, for plaintiff-appellee.

J. Gregory Walta, Colorado State Public Defender, O. Edward Schlatter, Deputy State Public Defender, Denver, for defendant-appellant.

RULAND, Judge.

Defendant, John L. Aragon, appeals from the judgment of the trial court denying his Crim.P. 35(b) motion to vacate a conviction for manslaughter. We reverse.

The factual allegations in the defendant's motion are not disputed by the People. The following summary of that motion is pertinent here. Defendant was arrested on August 19, 1974, and charged with first degree murder. The record reflects that the victim was abducted from a bar, and her body was found two days later in an open field in Chaffee County. The case against the defendant was based upon circumstantial evidence.

The first trial was scheduled to commence in Salida on February 18, 1975. Following an extensive voir dire of the jury panel, a jury was sworn on February 20. Immediately prior to presentation of opening statements, the district attorney informed defense counsel that he had discovery materials in his possession which should be disclosed. The district attorney

indicated that the materials had been in his possession for approximately one week prior to trial. These materials consisted of tape recordings of prosecution witnesses in which they "changed their times" as to certain key events, and other newly discovered witnesses who had allegedly observed the assailant's automobile leaving the scene of the abduction. It was not clear whether these witnesses could identify the defendant's car as that automobile.

The district attorney did not disclose, but defense counsel learned from listening to the tape recordings, that the interviews had been conducted by the district attorney personally and that these interviews provided defendant with alibi evidence which was previously unknown to the defense. Also, the district attorney had used information from the interviews as the basis for certain of the voir dire questions to the jury.

After reviewing the materials, the defense moved for, and the trial court declared a mistrial.

A second trial commenced on June 2, 1975. In the course of presenting the evidence in this case, the district attorney introduced in evidence plaster casts taken from tire tracks near the body of the victim. The district attorney presented the testimony of an expert for the Colorado Bureau of Investigation who testified that the cast impressions matched the tires on defendant's automobile. This evidence was a critical part of the prosecution's effort to link defendant to the crime.

After introduction of the casts, defense counsel noted that one of the casts had "1968" written on the backside. Court was recessed, an investigation was conducted by the district attorney's office, and defense counsel was thereafter informed that the cast was not a plaster cast taken from the tire tracks at the scene and had no bearing on the case.

The following day, defense counsel moved to strike the exhibit and testimony relating thereto, or, alternatively, to dismiss the case. The district attorney advised the court as to the result of his investigation. However, the court denied motions to strike, cure, or dismiss.

After all evidence had been presented, the district attorney tendered an instruction which advised the jury to disregard the fact that the expert had testified relative to this particular cast, and that it should consider only his testimony relating to the other casts. The court refused to give the instruction. In closing argument, the deputy district attorney indicated to the jury that the subject exhibit "was not relevant and it doesn't belong here." The jury returned a verdict of guilty.

Defendant then moved for a new trial based upon the admission of the plaster cast. This motion was granted. The district attorney initiated an original proceeding in the Supreme Court on December 18, 1975, in an effort to set aside the trial court's order, but the court denied the district attorney's petition the same date it was filed. The case was thereafter transferred to the Denver District Court where it was prosecuted by a different district attorney.

Prior to commencement of a third trial, defendant filed motions to dismiss based on grounds of double jeopardy and the failure to grant defendant a speedy trial. The motions were denied. That trial commenced on April 8, 1976, and consumed 8 days. After 2 days of deliberation, the jury announced that it was deadlocked and the trial court declared a mistrial. The jury foreman advised the trial court that 11 of the jurors voted for acquittal and one for conviction.

The case was scheduled for a fourth trial to commence on November 15, 1976. Prior to that date, defense counsel learned that a crucial alibi witness for defendant had been hospitalized and would not be available for trial. A continuance was granted. Thereafter, it was determined that two key alibi witnesses were unavailable, one because of medical problems and the other because of a "loss of memory." Certain prosecution witnesses were unable to recall the events other than by reference to prior transcripts, and certain materials necessary to revive their memories relative to the defense's

case had been lost or misplaced. Conversely, defense counsel was informed that other prosecution witnesses would "for the first time" testify to certain evidence discovered in the basement of the Chaffee County courthouse that had not been introduced in the prior trials. The defendant concluded to enter a negotiated plea of guilty to manslaughter.

The defendant explains his plea of guilty to the manslaughter charge based upon loss of defense evidence. He notes that his plea was tendered pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), and that he did not admit to participation in the crime in conjunction with acceptance of the guilty plea.

As to the first trial, the defendant contends that double jeopardy attached because the mistrial (which was requested and received) was caused by overreaching and bad faith on the part of the district attorney. As to the second trial, the defendant contends that both double jeopardy and due process considerations bar a retrial because he alleges that both the district attorney and the trial court knowingly allowed false evidence to be considered by the jury. This court raised the issue of whether the defendant's constitutional right to a speedy trial had been violated and additional oral argument was requested and presented. We now conclude that resolution of this issue is dispositive of the appeal.

Relying upon *Wixson v. People*, 175 Colo. 348, 487 P.2d 809 (1971), the People first contend that the defendant has waived his right to a speedy trial by entering a plea of guilty. In that case, our Supreme Court stated:

"Although this court has never spoken directly to this point, the law from other jurisdictions is clear that a plea of guilty to a charge acts as a waiver to any argument a defendant may have had concerning the denial of a speedy trial. [citations omitted]. *As the defendant had already pleaded guilty and had been sentenced when this motion to dismiss was filed*, we hold that he waived any argument he may have had concerning a denial of a speedy trial." (emphasis supplied)

We view *Wixson* as inapposite to this case. Here the defendant asserted his right by motion prior to the third trial. *See People v. Abeyta*, 195 Colo. 338, 578 P.2d 645 (1978). And, the improper denial of a defendant's motion to dismiss for violation of his statutory right to a speedy trial divests the trial court of jurisdiction to proceed. *Marquez v. District Court*, Colo., 613 P.2d 1302 (No. 80SA114 Announced July 14, 1980); *Hampton v. District Court*, Colo., 605 P.2d 54 (1980). Because the right to a speedy trial is one of the most cherished of our constitutional rights, we perceive no reason why the same result should not obtain when the constitutional right to a speedy trial is violated. *See P. V. v. District Court*, Colo., 609 P.2d 110 (1980).

Turning then to the merits of this issue, we note that in determining whether a defendant's right to a speedy trial has been violated under the Colorado and Federal constitution, the factors to be considered are: the length of the delay, the reasons for the delay, the defendant's demand for a speedy trial, and any prejudice to the defendant resulting from the delay. *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *People v. Buggs*, 186 Colo. 13, 525 P.2d 421 (1974). The determination of whether the speedy trial right has been violated "involves an *ad hoc* judgment" on the particular facts of each case, *Potter v. District Court*, 186 Colo. 1, 525 P.2d 429 (1974), and none of the factors is indispensable to a finding that a speedy trial has been denied. *Gelfand v. People*, 196 Colo. 487, 586 P.2d 1331 (1978); *People v. Slender Wrap, Inc.*, 36 Colo.App. 11, 536 P.2d 850 (1975).

The defendant was arrested and charged on August 19, 1974. The first trial which did not have to be aborted because of error commenced on April 19, 1976,—a delay of 20 months. The six month period specified by Colorado Statute "provides a reasonable guideline for implementation of the constitutional right." *P. V. v. District Court, supra.* Certainly a delay of 20 months is sufficient to violate the defendant's constitutional right to a speedy trial.

See *United States v. Colitto*, 319 F.Supp. 1077 (E.D.N.Y.1970). The district attorney advanced as a reason for granting the writ of prohibition that, "already the trial of the defendant has been delayed much too long."

In the first trial, the district attorney failed to disclose the existence of the tape recorded evidence prior to the time that the jury had been selected and sworn. Even if one assumes that no prosecutorial misconduct was involved, the People do not dispute the fact that the defendant had no course but to move for a mistrial and that the trial court's order granting such was correct. In the second trial, the jury's consideration of the improper evidence was prejudicial, the People were responsible for introduction of this evidence, and thus, the trial court's decision to grant a new trial was correct.

█ We further conclude that the district attorney's attempt to set aside the trial court's order granting a new trial by writ of prohibition was a frivolous appeal. *See People v. Slender Wrap, Inc., supra.* In the application for writ, the district attorney conceded that the plaster cast and testimony relative thereto were improperly admitted in evidence and that this evidence "could not *or might not* have influenced the verdict the jury . . ." Thus, we conclude that the entire period of delay at issue here is the responsibility of the People. And, it is immaterial whether those delays were intentionally or negligently caused. *See Dickey v. Florida*, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970) (Brennan, J., concurring); *United States v. Colitto, supra; State v. Tiedemann*, Mont., 584 P.2d 1284 (1978).

█ The prejudice to the defendant is evident and not disputed by the People. Two key alibi witnesses were gone by the time the fourth trial had been scheduled. Other witnesses had little, if any, recall independent of court transcripts, and portions of their testimony favorable to the defendant would be of questionable value. The defendant has suffered anxiety associated with facing two trials which were aborted because of the negligence of the prosecution.

Finally, we conclude that the requirement that a defendant assert his right too a speedy trial has no bearing on the resolution of this case. The defendant could not anticipate that two trials would be aborted because of the People's error. When the third trial was ordered, defendant did assert in a timely manner his right to dismissal.

The People suggest that any determination in this case that the defendant's constitutional right to a speedy trial has been violated is tantamount to a rule of law which mandates dismissal of the charges whenever the prosecution's negligence results in a mistrial. We think not. Each case requires an "ad hoc" evaluation. *Potter v. District Court, supra.* And, it is the combination of the length of delay, the fact that defendant had to face the anxiety of two trials which were aborted because of the People's negligence together with the substantial resultant prejudice which prompts our holding in this case.

The defendant's conviction is reversed and the cause is remanded to the trial court for dismissal of the information.

STERNBERG and KIRSHBAUM, JJ., concur.