**The PEOPLE of the State of Colorado, Petitioner,**

v.

**John L. ARAGON, Respondent.**

**No. 80SC277.**

Supreme Court of Colorado, En Banc.

April 5, 1982.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Frederick Y. Yu, Sp. Asst. Atty. Gen., Denver, for petitioner.

J. Gregory Walta, Colorado State Public Defender, O. Edward Schlatter, Deputy Public Defender, Denver, for respondent.

ERICKSON, Justice.

We granted certiorari to review *People v. Aragon*, Colo.App., 622 P.2d 579 (1980). The court of appeals reversed the manslaughter conviction of the defendant based upon denial of a speedy trial. *U.S.Const.*, Amend. VI; *Colo.Const.*, Art. II, Sec. 16. We affirm the judgment of the court of appeals, but do not approve of the speedy trial analysis as a basis for reversal.

### I.

In the early morning hours of August 16, 1974, a female bartender was abducted from a bar in Salida, Colorado. Her body was found in an open field two days later and on August 19, 1974, the defendant, John L. Aragon, was arrested and charged with first-degree murder.

The defendant's first trial was scheduled to begin in Salida on February 18, 1975. Following extensive voir dire examination, the jury was sworn on February 20, 1975. Immediately after the jury was sworn, the district attorney advised defense counsel that he had recorded statements from several witnesses which differed from the statements provided to defense counsel pursuant to the discovery orders of the court. The taped statements had been in the possession of the district attorney for approximately one week prior to trial. The district attorney used the information from the interviews as a basis for his voir dire examination of the jury. When defense counsel heard the tape recorded interviews, they discovered information which provided the defendant with an alibi defense. The information previously known to defense counsel did not suggest an alibi. The district attorney also sought to endorse additional witnesses after the jury was sworn. As a result, when defense counsel made a motion for a mistrial, it was granted.

Thereafter, the defendant moved to dismiss the case on the grounds of double jeopardy, and asserted that the prosecutor had failed to make discovery of evidence favorable to the accused available in accordance with the court's discovery order and the constitutional mandate of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The defendant's motion was denied, and the second trial commenced in Salida on June 2, 1975. As part of the prosecution's case in chief, the district attorney introduced a plaster cast of a tire track into evidence. An expert witness for

the prosecution testified that he made the cast from tire tracks in the field where the victim's body was found. An expert from the Colorado Bureau of Investigation also testified that the cast impressions matched the tires on the defendant's automobile. The expert testimony was a critical part of the circumstantial evidence which the prosecution offered to prove the defendant's participation in the crime. After the prosecution rested its case, the defense discovered that the plaster cast was made in 1968 and could not have provided a basis for identification of the defendant's automobile.

Defense counsel then filed a motion to strike the exhibit and the related testimony or, alternatively, to dismiss the case. The court denied the motion and the jury found the defendant guilty. Thereafter, defense counsel's motion for a new trial was granted. The trial court concluded that the admission of the false exhibit and the related expert testimony might have influenced the jury in reaching its verdict. *See Miller v. Pate*, 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 690 (1967); *People v. Kingery*, 189 Colo. 56, 536 P.2d 822 (1975).

Prior to the commencement of a third trial, the defendant again filed a motion to dismiss on the grounds of double jeopardy and for failure to grant a speedy trial. Both motions were denied and on April 8, 1976, the third trial commenced. Following an eight-day trial, the jury was unable to reach a verdict and was discharged. Subsequently, the jury foreman reported that the jury was deadlocked with eleven votes for acquittal and one for conviction.

A fourth trial was scheduled to commence on November 15, 1976. Prior to trial, defense counsel learned that a crucial alibi witness was hospitalized and would not be available for trial. As a result, the court granted a continuance until February 22, 1977. The trial was later postponed again until July 11, 1977, because the witness was still unavailable.

Before the fourth trial commenced, defense counsel found that two key alibi witnesses were unable to testify, one because of medical problems and the other because of "loss of memory." Moreover, when important prosecution witnesses were interviewed, they informed defense counsel that they had forgotten nearly everything, and that their testimony would not be based on their memories of the events, but upon what they read and memorized from the transcripts of their previous testimony. Other prosecution witnesses had forgotten matters which were helpful to the defense, and the materials necessary to refresh their recollection were either lost or destroyed while in the possession of the prosecution.

By contrast, the prosecutor informed defense counsel that certain witnesses would testify to matters which they never testified to during any of the prior proceedings. The new testimony concerned certain key evidence which the police had apparently "discovered" in the basement of the Chaffee County Courthouse and which was not introduced during the prior trials or made available in accordance with the court's order for discovery. As a result, the defendant elected to plead guilty to manslaughter. The defendant was sentenced to four years in the Colorado State Penitentiary and had already served twenty months in the county jail while waiting for trial. His penitentiary sentence commenced on September 9, 1977.

Subsequently, the defendant made a motion under Crim.P. 35(b) to vacate his conviction for manslaughter, claiming that his plea of guilty to manslaughter was not based upon an admission to participation in the crime, but upon a loss of defense evidence. *See North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). The trial court denied the motion and the defendant appealed.

The court of appeals reversed the defendant's conviction. Although the Crim.P. 35(b) motion did not specifically allege that the defendant had been denied a speedy trial, the court of appeals ordered argument on that issue and concluded that the defendant's constitutional right to a speedy trial had been violated. *People v. Aragon*, Colo.App., 622 P.2d 579 (1980). *See U.S.*

*Const.,* Amend. VI; *Colo.Const.,* Art. II, Sec. 16. We granted certiorari and, for the reasons expressed herein, we affirm the judgment of the court of appeals.

## II.

We disagree with the analysis of the court of appeals and its conclusion that the defendant's constitutional right to a speedy trial was violated. In our view, *Wixson v. People,* 175 Colo. 348, 487 P.2d 809 (1971), is a formidable barrier which prevents the defendant's plea of guilty from being set aside on the basis of a denial of the constitutional right to a speedy trial. However, we need not distinguish or overrule *Wixson* under the facts of this case. We believe that the facts before us establish a foundation for relief without addressing the defendant's Sixth Amendment right to a speedy trial. *Compare, Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *People v. Buggs,* 186 Colo. 13, 525 P.2d 421 (1974). The prosecution concedes that the facts set forth in support of the defendant's motion for postconviction relief are true. Crim.P. 35(b). Under the circumstances, we agree with the defendant's contention that he has been denied due process of law in violation of the Fourteenth Amendment to the United States Constitution and Article II, section 25 of the Colorado Constitution.

In *People, ex rel. Coca v. District Court,* 187 Colo. 280, 530 P.2d 958 (1975), we held:

"Due process and fundamental fairness are the considerations for determining whether or not there has been prejudice to the defendant of a type and kind that would require dismissal. No fixed rules exist, and each case must be resolved on the particular facts which are before the court. Certain key factors, among others, are whether defense witnesses have become unavailable by reason of the delay; whether the delay was purposeful and intended to prejudice the defendant; the kind of evidence and the quantum which is available to prove the prosecution's case; and whether justice dictates that the case be dismissed. *See Robinson* *v. United States,* 459 F.2d 847 (D.C.Cir. 1972); *Ross v. United States,* 349 F.2d 210 (D.C.Cir.1965). *Compare Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)." *Id.*

We have previously held that the actions of a prosecutor, although procedurally within the law, may result in a violation of the defendant's rights to due process and fundamental fairness:

"The question is whether the procedures followed by the district attorney violated the concept of fundamental fairness guaranteed by the due process clause of the federal and Colorado constitutions. In both the county court and the district court, the defendant was prepared for trial and in both courts the actions were dismissed by the district attorney through no fault of the defendant. The repeated filings of essentially the same charges against the defendant and the pattern of dismissal of counts, followed by refiling of the same counts, required the defendant to make multiple court appearances and subjected the defendant to excessive expense in defending himself, and to unwarranted prolonged anxiety and concern under the circumstances. In addition, defendant was placed under the cloud of undetermined criminal charges for an indeterminate and unreasonable period of time by the procedures adopted by the district attorney.

"We conclude that the methods employed by the district attorney to keep the prosecution of the defendant alive, although procedurally within the law, in fact violated the due process requirement of fundamental fairness." *People v. Abrahamsen,* 176 Colo. 52, 489 P.2d 206 (1971).

In *Abrahamsen,* the district attorney filed charges against the defendant and subsequently dismissed and refiled them for different reasons at various times during a one-year period. We believe that the facts presently before us are far more compelling than those presented in *Abrahamsen.* Further, our consideration of the key factors expressed in *Coca* compels the conclusion

that the constitutional concepts of due process of law and fundamental fairness were violated in this case.[1]

The defendant was compelled to proceed to trial on four separate occasions, and it was through no fault of the defendant that the first three trials were concluded without a verdict. The facts before us clearly demonstrate that the delay resulting from the mistrials which were declared during the first two trials were solely attributable to the prosecution. As a result, the prosecution twice denied the defendant a fair trial. In the third trial, a new prosecutor presented the evidence which was available, and the jury was deadlocked with eleven of the twelve jurors voting for acquittal. No continuance was requested by the defendant until approximately two and one-half years following the initiation of proceedings, when it became necessary because the alibi witnesses became unavailable. Moreover, the prosecution was given three opportunities to convict the defendant before three different juries and failed each time.

In our view, the defendant was severely prejudiced by the delays which occurred before he pled guilty to manslaughter to avoid a fourth trial. The procedures adopted by the prosecution place the defendant "under the cloud of undetermined criminal charges for an indeterminate and unreasonable period of time." *People v. Abraham-sen, supra.* Because two and one-half years elapsed between the first trial and the fourth trial, several defense witnesses were unavailable to testify and certain items of evidence were missing. Under the circumstances, it is clear that the defendant's ability to effectively defend himself at the fourth trial was severely limited, and he was compelled to plead guilty to a reduced charge. Whether it was through deliberate prosecutorial misconduct, overreaching, gross negligence, or simply through ineptitude and delay, the effect of the aborted proceedings was the same. The defendant suffered the inequities, indignities and abuse which the constitutional safeguards of due process and fundamental fairness are designed to protect against. *Cf. People v. Erickson,* 194 Colo. 557, 574 P.2d 504 (1978). Accordingly, we conclude that the defendant's conviction of manslaughter must be vacated.

For the reasons expressed in this opinion, we affirm the judgment of the court of appeals.

---

1. Defense counsel also contends that prosecutorial misconduct during the first and second trials prohibited each successive retrial of the defendant. Because of our resolution of this case on due process and fundamental fairness grounds, however, we need not address whether either of the subsequent trials was barred by the constitutional prohibitions against double jeopardy. *See, U.S.Const.,* Amend. V; *Colo. Const.,* Art. II, Sec. 18. *See also United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); *Illinois v. Somerville,* 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); *People v. Baca,* 193 Colo. 9, 562 P.2d 411 (1977).