The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Clarence McCLURE,
Defendant-Appellee.

No. 86SA415.

Supreme Court of Colorado,
En Banc.

June 6, 1988.
Rehearing Denied July 5, 1988.

Norman S. Early, Jr., Dist. Atty., Nathan B. Coats, Chief Deputy Dist. Atty., Donna Skinner Reed, Deputy Dist. Atty., Denver, for plaintiff-appellant.

Jeffery K. Holmes, Denver, for defendant-appellee.

VOLLACK, Justice.

The People directly appeal the dismissal by the Denver District Court of charges against Clarence McClure (defendant) of three counts of sexual assault on a child and three counts of aggravated incest, based on a denial of rights to due process and fundamental fairness. We reverse and remand the case with instructions to reinstate the charges.

### I.

In 1985, the defendant became the subject of a criminal investigation concerning allegations that he had sexually assaulted C.V., a minor, in violation of section 18–3–405, 8B C.R.S. (1986). Detective Malone was assigned to investigate the case. On September 1, 1985, Detective Malone interviewed A.M., the defendant's nine year old granddaughter, in connection with the assault on C.V. During the interview, A.M. told him that the defendant had sexually assaulted her on August 21, 1985, about five days before the school year began. On September 17, the defendant was charged in Denver District Court with sexual assault on C.V. A second count of sexual assault on a child was added based on the statements of A.M. to Detective Malone. The case was bound over for trial after preliminary hearings.

On February 14, 1986, the defendant moved to sever the two counts for trial. His motion was granted. The trial date on Count Two, concerning A.M., was set for May 20, with a speedy trial deadline of August 14. On April 14, the defendant filed a notice of alibi defense, stating that he was in California when the alleged assault on A.M. occurred.

On May 13, the district attorney met with A.M. in preparation for the May 20 trial and learned that the date of the alleged assault was not August 21, 1985, but between August 15 and August 31, 1982.[1] The next day the district attorney relayed this information to the defendant and the court, explaining that it was the normal procedure of the district attorney's office to avoid a second interview with sexual assault victims until a week or two before trial so as to reduce the number of times a victim must recount traumatic events. On May 16, the district attorney filed a Motion to Amend Count Two to reflect the different dates provided by A.M. That motion was denied. When the district court denied the Motion to Reconsider Amending Count Two on July 14, the district attorney successfully moved to dismiss Count Two without prejudice.

---

1. At the May 13 interview, A.M. also indicated that another "incident" concerning herself and the defendant had occurred between June 7 and July 4, 1985. The defendant was never charged in that incident.

On August 1, 1986, the defendant was found guilty of one count of sexual assault on a child, C.V.

On August 11, the district attorney filed charges against the defendant directly in Denver District Court, based on the allegations of A.M. that had been dismissed on July 14. The six count information alleged that the defendant committed three counts of sexual assault on a child and three counts of aggravated incest with A.M.[2] The dates of the six charges that were filed on August 11 differed from the date alleged in the original Count Two as well as the amended dates that A.M. provided to the district attorney on May 13. The defendant filed a motion to dismiss all six charges with prejudice on October 31, contending that the prosecution had violated the defendant's constitutional rights to due process and fundamental fairness by changing the allegations and dates of the offenses and by improperly influencing A.M. to change the dates of the original Count Two. Following a hearing on November 5, 1986, the district court granted defendant's motion to dismiss. The district attorney appealed directly to this court pursuant to section 16-12-102, 8A C.R.S. (1986).

## II.

The defendant argues that the district court did not err in granting his motion to dismiss the six charges. He relies on four grounds to justify this position: first, that the prosecution failed for eight weeks to provide the defendant with a bill of particulars, until he filed a motion to dismiss; second, that the prosecution did not move to dismiss the charges relating to A.M. during the two month interval between denial of the Motion to Amend Count Two and denial of the Motion to Reconsider Amending Count Two; third, that the prosecution changed the dates on which the alleged assaults on A.M. occurred three times, which left him unable to prepare a defense; and fourth, that the prosecution somehow influenced A.M. to change the date she was sexually assaulted.[3]

 The first two grounds are without merit. The district attorney provided the

---

**2.** Counts One, Two, and Three allege that the defendant sexually assaulted A.M. in violation of section 18-3-405 between January 1 and April 1, *1981*, between June 1 and August 31, 1984, and between April 15 and May 30, 1986, respectively. Amended Counts Four, Five, and Six allege that the defendant engaged in aggravated incest with A.M. in violation of section 18-6-302 between January 1 and April 1, 1981, between June 1 and August 31, 1984, and between April 15 and May 30, 1986, respectively.

Section 18-3-405, 8B C.R.S. (1986) defines sexual assault on a child. It states in pertinent part:

(1) Any actor who knowingly subjects another not his or her spouse to any sexual contact commits sexual assault on a child if the victim is less than fifteen years of age and the actor is at least four years older than the victim.

(2) Sexual assault on a child is a class 4 felony, but it is a class 3 felony if:

(a) The actor commits the offense on a victim by use of such force, intimidation, or threat as specified in section 18-3-402(1)(a), (1)(b), or (1)(c); or

(b) The actor who commits the offense on a victim is one in a position of trust with respect to the victim.

Aggravated incest is defined in section 18-6-302, 8B C.R.S. (1986). It states:

(1) A person commits aggravated incest when he or she knowingly:

(a) Marries his or her natural child or inflicts sexual penetration or sexual intrusion on or subjects to sexual contact, as defined in section 18-3-401, his or her natural child, stepchild, or child by adoption, but this paragraph (a) shall not apply when the person is legally married to the stepchild or child by adoption. For the purpose of this paragraph (a) only, "child" means a person under twenty-one years of age.

. . . .

(2) Aggravated incest is a class 3 felony.

**3.** In his motion for dismissal, the defendant states:

15. On May 13, 1986 apparently in preparation for trial and in light of the solid nature of the alibi [A.M.] was apparently questioned and indicated that the incident happened not in 1985 but three years before in 1982.

. . . .

When the People discovered that [the] alibi was a good one they sought to change the date of the offense. This kind of behaviour discourages compliance with the rules of procedure and the same requirement that governs defendant's obligations to furnish the alibi defense thirty days before trial should bar the prosecution from amending the information after that date. Crim.P. Rule 12.1.

defendant with a bill of particulars, and the defendant has shown no prejudice by the delay. The two month period between denial of the Motion to Amend Count Two and denial of the Motion to Reconsider Amending Count Two likewise does not represent an unusual delay. Evaluating the third and fourth grounds, however, requires further analysis.

A.

The defendant does not deny that the six charges that were dismissed were brought within the ten-year statute of limitations described in section 18–3–411(2). The applicable statute of limitations is the "primary guarantee against bringing overly stale criminal charges." *United States v. Marion,* 404 U.S. 307, 322, 92 S.Ct. 455, 464, 30 L.Ed.2d 468 (1971) (quoting *United States v. Ewell,* 383 U.S. 116, 122, 86 S.Ct. 773, 777, 15 L.Ed.2d 627 (1966)). Nor does he claim that the delay caused by dismissal and refiling of charges abridged his constitutional right to a speedy trial. Nevertheless, we have held that certain efforts by the district attorney to maintain a criminal case, although procedurally within the law, violate the requirements of due process and fundamental fairness to the defendant, and demand dismissal. *People v. Aragon,* 643 P.2d 43, 47 (Colo.1982); *People v. Abrahamsen,* 176 Colo. 52, 58, 489 P.2d 206, 209 (1971). In *Abrahamsen,* charges of theft of trade secrets were dismissed by the district court because the prosecutor repeatedly dismissed and refiled essentially the same charges in different courts despite a court warning that dismissal would preclude refiling in the future. In affirming the district court, we recognized that the dismissal was caused not by the defendant's wrongful conduct but by the prosecu-

tor's carelessness in failing to file the proper charges in the appropriate court. In *Aragon,* we upheld the district court's dismissal of first-degree murder charges due to conduct by the prosecutor that caused or contributed to a two and one-half year delay in compelling the defendant to proceed to trial on four separate occasions. The prosecutor had failed timely to reveal information providing the defendant with an alibi, failed to notify the defense of changed prosecution witness testimony, introduced false exhibits and expert testimony at trial, and produced new evidence years after the event which the police had apparently "discovered" in the basement of the courthouse. As a result, the defendant pled guilty to manslaughter. *Aragon,* 643 P.2d at 44–45.

Whether an individual's rights to due process and fundamental fairness have been violated by prosecutorial misconduct to an extent warranting dismissal depends on the circumstances of each case. *Aragon,* 643 P.2d at 46. In *People ex rel. Coca v. District Court,* 187 Colo. 280, 530 P.2d 958 (1975), we stated:

Certain key factors, among others, are whether defense witnesses have become unavailable by reason of the delay; whether the delay was purposeful and intended to prejudice the defendant; the kind of evidence and the quantum which is available to prove the prosecution's case; and whether justice dictates that the case be dismissed.

187 Colo. at 284–85, 530 P.2d at 960–61 (citations omitted).[4] The record does not reveal what legal standard the trial court applied in dismissing the charges,[5] but we conclude that the *Coca* test is the appropriate one to consider in cases of dismissal of charges based on claims of denial of due

**4.** Although *Coca* arose in the context of a claim of denial of the right to a speedy trial under the sixth amendment, we applied the *Coca* test to the facts in *Aragon* in concluding that prosecutorial misconduct had abridged the defendant's rights to due process and fundamental fairness despite the absence of a speedy trial violation. *See Aragon,* 643 P.2d at 46.

**5.** At the conclusion of the hearing, the trial court stated: "Yes. I understand the difficulty

in these cases, particularly dealing with children. Under the circumstances, I really think that the motion should be granted. So I will do that."

In addition to failing to state the relevant legal standard, the trial court made no specific findings of fact to justify its conclusion that dismissal of the charges was appropriate in this case.

process and fundamental fairness. In applying the *Coca* test, we limit our inquiry to a review of the record and recognize that, with the exception of the factor that caused A.M. to change the date of the original assault, the facts are not in dispute.

### B.

 Of those factors listed in the *Coca* test, the most critical in this case concerns the question of prosecutorial misconduct. The record reveals no evidence of purposeful delay on the part of the prosecutor, and no evidence that the delay was intended to prejudice the defendant. In fact, it reveals the opposite. On the day after discovering the discrepancy in dates of the alleged assault on A.M., the district attorney notified the defendant and the court and attempted to amend the charge to reflect the changed allegation. The district attorney's explanation for not discovering the discrepancy sooner was plausible as a routine practice designed to respect the feelings of sexual assault victims. There was no contention that the defendant would have been denied time to prepare an adequate defense to the modified charges. Finally, the intimation of the defendant that the prosecution somehow influenced A.M. to change her story finds no support in the record. Accordingly, we conclude that there was no prosecutorial misconduct in this case.

As for the remaining factors of the *Coca* test, there is no allegation that defense witnesses have become unavailable by reason of the delay; the defendant merely contends that the delay of one year together with the charges dating back five years has made the prospect of mounting a defense "an impossible task." The United States Supreme Court has addressed this issue in the context of preindictment delay.

Appellees have not, of course, been able to claim undue delay pending trial, since the indictment was brought on April 21, 1970, and dismissed on June 8, 1970. Nor have appellees adequately demonstrated that the pre-indictment delay by the Government violated the Due Process Clause. No actual prejudice to the conduct of the defense is alleged or proved, and there is no showing that the Government intentionally delayed to gain some tactical advantage over appellees or to harass them. Appellees rely solely on the real possibility of prejudice inherent in any extended delay: that memories will dim, witnesses become inaccessible, and evidence be lost. In light of the applicable statute of limitations, however, these possibilities are not in themselves enough to demonstrate that appellees cannot receive a fair trial and to therefore justify the dismissal of the indictment.

*United States v. Marion,* 404 U.S. 307, 325–26, 92 S.Ct. 455, 466, 30 L.Ed.2d 468 (1971); *see also People v. Small,* 631 P.2d 148, 157 (Colo.1981) (in the absence of intentional or negligent conduct on the part of the prosecutor, actual prejudice to the defendant resulting from preindictment delay is insufficient *per se* to require dismissal).

 As for the third factor of the *Coca* test, the kind and quantum of evidence available to prove the prosecution's case appears to be limited to the testimony of A.M. and statements by C.V. of prior similar acts of the defendant.[6] As the prosecution has recognized, the fact that A.M. changed her testimony concerning the alleged assaults bears on her credibility but does not indicate undue influence, coercion, inducement or other wrongful conduct on the part of the district attorney.

Finally, in determining whether justice dictates that the case be dismissed under

---

6. Section 16–10–301, 8A C.R.S. (1986), concerns evidence of similar transactions. Subsection (1) states:

In criminal prosecutions for an unlawful sexual offense, as defined in section 18–3–411, C.R.S., or ... the commission of a class 3 felony for sexual assault on a child as provided in section 18–3–405(2), C.R.S., the prosecu-

tion may, subject to the provisions of this part 3, introduce evidence of other, similar acts or transactions of the defendant for the purpose of showing a common plan, scheme, design, identity, modus operandi, motive, guilty knowledge, or intent.

Subsection (1) was amended in 1987 to include other sexual offenses not pertinent to this case.

the *Coca* test, we must consider the prejudicial effect that dismissal and refiling of charges had on the defendant. In both *Abrahamsen* and *Aragon,* dismissal of charges was the appropriate sanction because misconduct of the prosecutor caused the defendant to make multiple court appearances, subjected the defendant to excessive expense in defending himself, and placed the defendant under a cloud of undetermined criminal charges for an indeterminate and unreasonable period of time. *Aragon,* 643 P.2d at 46; *Abrahamsen,* 176 Colo. at 58, 489 P.2d at 209. By contrast, the defendant in this case has not faced multiple court appearances solely for the purpose of defending himself against charges based on A.M.'s allegations. Prior to May 16, 1986, all of the defendant's court appearances relating to A.M. had coincided with court appearances relating to C.V. Between May 16 and November 5, 1986, when his motion to dismiss was granted, the defendant was required to make only four court appearances. We cannot say that four court appearances in a six month period is an unfair burden to impose upon a defendant, especially when compared to the number of court appearances the defendants in *Abrahamsen* and *Aragon* were required to make.

 In considering the factors of the *Coca* test, we conclude from the undisputed facts in the record that the defendant's right to due process and fundamental fairness was not abridged by the filing of charges concerning A.M., and therefore hold that the district court erred as a matter of law in dismissing the six count information against the defendant. The judgment of the district court is reversed and the case is remanded to the district court with instructions to reinstate the charges.